10-5107-cv
Applied Energetics v. Newoak

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

------------

August Term, 2010

(Argued: April 13, 2011          Decided: July 13, 2011)

Docket No. 10-5107-cv

- - - - - - - - - - - - - - - - - - - - - - - X

APPLIED ENERGETICS, INCORPORATED,

Petitioner-Appellant,

- v -

NEWOAK CAPITAL MARKETS, LLC,

Respondent-Appellee.

- - - - - - - - - - - - - - - - - - - - - - - X

Before:   KEARSE and CHIN, Circuit Judges, and
          RAKOFF, District Judge.*

    Appeal from a final order and judgment of the United States District Court for the Southern District of New York compelling arbitration under 9 U.S.C. § 4.  Reversed.

> CLIFFORD THAU (Hilary L. Preston, on the brief), Vinson & Elkins LLP, New York, NY for Petitioner-Appellant.
>
> LEANNE M. SHOFI (Joseph M. Pastore III, on the brief), Fox Rothschild, LLP, New York, NY , for Respondent-Appellee.

---

*The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

RAKOFF, District Judge:

Petitioner-Appellant Applied Energetics, Inc. ("Applied") appeals the district court's final order and judgment compelling arbitration of the claims of Respondent-Appellee NewOak Capital Markets, LLC ("NewOak") before the Financial Industry Regulatory Authority ("FINRA"). Because we find that the parties expressly agreed to adjudicate their disputes before a court, we reverse, and remand to the district court for further proceedings.

BACKGROUND

Applied is a developer and manufacturer of military technology. On September 28, 2005, NewOak, an independent broker dealer, entered into a preliminary letter agreement with Applied (the "Engagement Agreement"), by which NewOak agreed to act as Applied's exclusive placement agent in an anticipated $20 million private offering of Applied securities to finance Applied's anticipated development of a "field-deployable vehicle." The Engagement Agreement contained an arbitration clause that provided that:

> Each of [NewOak] and [Applied] agrees that any dispute arising out of or relating to this letter, the Indemnity Agreement and/or the transactions contemplated hereby or thereby . . . shall be resolved through binding arbitration before the National Association of Securities Dealers[1] . . . in New York City.

_____
[1] The National Association of Securities Dealers is one of the predecessors of FINRA.

-2-

However, the Engagement Agreement also specifically contemplated that the parties would enter into a subsequent, more formal agreement setting forth "the terms and conditions contained [in the Engagement Agreement] as well as those customarily contained in agreements of such character." On October 24, 2005, NewOak and Applied signed that subsequent agreement (the "Placement Agreement"), which, though embodying much of the substance of the Engagement Agreement, omitted any reference to arbitration. Instead, the Placement Agreement expressly provided that the agreement would be governed by New York law and that:

> Any dispute arising out of this Agreement shall be adjudicated in the Supreme Court, New York County or in the federal district court for the Southern District of New York.

The Placement Agreement also contained a merger clause, which provided that the Placement Agreement and certain other documents related to the transaction -- namely, the Purchase Agreement, the Registration Rights Agreement, the Escrow Agreement, and the Warrant -- "constitute the entire understanding and agreement between the parties" with respect to NewOak's placement of Applied securities, and that "there are no [other] agreements or understandings" that apply. The Engagement Agreement was not among the documents listed in the Placement Agreement's merger clause.

On January 14, 2010, NewOak initiated arbitration against Applied with FINRA, asserting various claims pursuant to its

-3-

allegations that, between May 4, 2005 and May 10, 2006, Applied "knowingly disseminated materially false and misleading information about the development and production capability" of the field-deployable vehicle, as well as about "the status of [its] real or potential sales." NewOak further alleged that Applied's officers and directors collectively sold 1.5 million shares of their personal Applied securities holdings during the time that the company's securities were artificially inflated as a result of the company's misrepresentations. In response, Applied filed a petition in the Supreme Court of the State of New York seeking to stay the FINRA arbitration on the ground that the mandatory court-adjudication provision of the Placement Agreement superseded the parties' earlier agreement to arbitrate their disputes. NewOak timely removed the petition to the Southern District of New York, and then moved to compel arbitration under the arbitration clause of the Engagement Agreement and § 4 of the FAA.

In a Report and Recommendation dated October 5, 2010, the Magistrate Judge to whom the matter was initially referred recommended that the district court grant the petition and deny arbitration. Applied Energetics, Inc. v. NewOak Capital Markets, LLC, No. 10 Civ. 1669, 2010 WL 3860386, at *1 (S.D.N.Y. Oct. 5, 2010) ("Applied I"). But in a written opinion dated December 3, 2010, the district court granted NewOak's motion and ordered the

-4-

parties to arbitrate.  Applied Energetics, Inc. v. NewOak Capital Markets, LLC, No. 10 Civ. 1669, 2010 WL 4968186, *1 (S.D.N.Y. Dec. 3, 2010) ("Applied II").  This appeal followed.

DISCUSSION

We review de novo the district court's order compelling arbitration.  See Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co. Ltd., 189 F.3d 289, 295 (2d Cir. 1999).

The district court, relying primarily on this Court's decision in Bank Julius Baer & Co., Ltd. v. Waxfield Ltd., 424 F.3d 278 (2d Cir. 2005), concluded that the Engagement Agreement's arbitration clause and the Placement Agreement's adjudication clause "may be read as complementary" to one another.  Applied II, at *3.  The district court reasoned that, because arbitration awards "may only be enforced by subsequent judicial action," Bank Julius, 424 F.3d at 284, the Engagement Agreement's arbitration clause could be construed as requiring arbitration of the parties' disputes in the first instance, with the Placement Agreement's adjudication clause merely designating that any action to enforce or dispute an arbitral award must occur in the courts enumerated therein.  See Applied II, at *3. Since the Bank Julius Court provided that "if there is a reading of the various agreements that permits the Arbitration Clause to remain in effect, we must choose it," 424 F.3d at 284, the

-5-

district court granted NewOak's motion and compelled the parties to arbitrate NewOak's claims.

We disagree with the district court's conclusion that the Engagement Agreement's arbitration clause and the Placement Agreement's court-adjudication clause can reasonably be read as complementary. Rather, this case falls within the alternative scenario, also contemplated by Bank Julius, where contracting parties are free to revoke an earlier agreement to arbitrate by executing a subsequent agreement the terms of which plainly preclude arbitration. See 424 F.3d at 284.

A close reading of Bank Julius is instructive. In Bank Julius, the parties, like those in the instant case, initially agreed to arbitrate "any . . . dispute" arising out of their contractual relationship and, likewise, subsequently entered into an agreement that omitted any mention of arbitration. Id. at 282. The subsequent agreement included, however, a non-exclusive forum selection clause that read as follows:

> Without limiting the right of the [plaintiff] to bring any action or proceeding against [the defendant] . . . in the courts of other jurisdictions, [the defendant] hereby irrevocably submits to the jurisdiction of any New York State or Federal court sitting in New York City, and . . . hereby irrevocably agrees that any Action may be heard and determined in such New York State court or in such Federal court.

424 F.3d at 282 (emphasis omitted). Furthermore, the subsequent agreement, although containing a merger clause, also provided that "the rights and remedies provided [herein] are cumulative

and not exclusive of any rights or remedies provided under any other agreement." Id.

Under these circumstances, the Court in Bank Julius concluded that the forum selection clause in the subsequent agreement could be read as complementary, rather than contradictory, to the parties' initial agreement to arbitrate: the forum selection clause would operate to provide New York courts with (non-exclusive) jurisdiction over ancillary proceedings -- such as to enforce an arbitral award or to challenge the validity of the arbitration agreement -- but the merits of any dispute would be resolved in the first instance by arbitration. See id. at 284-85 While other readings were possible, the presumption in favor of arbitration made this reading the preferred interpretation. Id.

The case at bar is different. Here, the Placement Agreement's language that "[a]ny dispute" between the parties "shall be adjudicated" by specified courts stands in direct conflict with the Engagement Agreement's parallel language that "any dispute . . . shall be resolved through binding arbitration." Both provisions are all-inclusive, both are mandatory, and neither admits the possibility of the other.

Moreover, use of the word "adjudicate[]" in the Placement Agreement's clause is a clear and unmistakable reference to judicial action. See Black's Law Dictionary 47, 922 (9th ed.

2009) (defining "adjudicate" as "[t]o rule upon judicially," and defining judicial as "[o]f, relating to, or by the court or a judge"). Similarly, the clause's use of the obligatory verb "shall" precludes the resolution of the parties' disputes by any means other than their "adjudicat[ion]" by a court of law. See Phillips v. Audio Active Ltd., 494 F.3d 378, 386-87 (2d Cir. 2007) (forum selection clause using obligatory language precludes parties from bringing an action arising thereunder in forums other than those enumerated therein). Accordingly, the Placement Agreement's adjudication clause "specifically precludes" arbitration, see Bank Julius, 424 F.3d at 284 (internal quotation marks omitted), and, by operation of the merger clause,[1] displaces the Engagement Agreement's arbitration clause. Under the express terms of the Placement Agreement, the parties' instant disputes must therefore be heard in the first instance by

---

[1] NewOak argues that "'a merger clause acts only to require full application of the parol evidence rule to the writing in question.'" Appellee's Br. 17 (quoting Bank Julius, 424 F.3d at 283). While this may be true of a "general merger provision," see Primex Int'l Corp. v. Wal-Mart Stores, Inc., 89 N.Y.2d 594, 599 (N.Y. 1997), the merger clause in the Placement Agreement went beyond merely stating that the agreement "represents the entire understanding between the parties." See id. It further stated that "there are no agreements or understandings with respect to the subject matter hereof" and specifically identified the agreements that were in force (i.e., the Placement Agreement, Purchase Agreement, Registration Rights Agreement, Escrow Agreement, and Warrant). Thus, the merger clause here, by its own terms, clears the path for the Placement Agreement's adjudication clause to displace the Engagement Agreement's arbitration clause.

either the New York State Supreme Court for New York County or the federal district court for the Southern District of New York.

Even assuming, as the district court found, that the provisions in the two agreements could reasonably be read as complementary, we conclude that the district court erred in applying the presumption in favor of arbitration. As the Supreme Court reaffirmed in Granite Rock Co. v. International Brotherhood of Teamsters, "in FAA and in labor cases" the presumption in favor of arbitrability should only be applied "where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." 130 S. Ct. 2847, 2858-59 (2010). In other words, while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made. See, e.g., Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003). "[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." Id. (internal quotation marks and brackets omitted). Here, because the parties dispute not the scope of an arbitration clause but whether an obligation to arbitrate exists, the presumption in favor of arbitration does not apply.

Finally, in deciding whether a contractual obligation to arbitrate exists, "courts should generally apply state-law principles that govern the formation of contracts." Mehler v.

-9-

Terminix Int'l Co., 205 F.3d 44, 48 (2d Cir. 2000).  Under New York law, "[i]t is well established that a subsequent contract regarding the same matter will supersede the prior contract." Barnum v. Millbrook Care Ltd. P'ship, 850 F.Supp 1227, 1236 (S.D.N.Y.) (citing Coll. Auxiliary Servs. Of State Univ. Coll., Inc. v. Slater Corp., 456 N.Y.S.2d 512 (3d Dep't 1382)), aff'd 43 F.3d 1458 (2d Cir. 1994).  Here, for the reasons set forth above, we conclude, as a matter of law, that the Placement Agreement superseded the Engagement Agreement.

For the foregoing reasons, the order of the district court compelling arbitration is reversed and the matter is remanded with direction to grant the petition to stay the FINRA arbitration and to take such other action as is consistent with this Opinion.