2014 COA 19

**IN RE the MARRIAGE OF Nancy L. DORSEY, Appellant,**

**and**

**John Dorsey, Appellee.**

**Court of Appeals No. 13CA0538**

Colorado Court of Appeals, Div. VII.

Announced February 27, 2014

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S. 2013.

492

City and County of Denver District Court
No. 05DR2959, Honorable Shelley I. Gilman,
Judge

Brice A. Tondre, P.C., Brice A. Tondre,
Lakewood, Colorado, for Appellant

Law Office of Michael F. DiManna, LLC,
Michael F. DiManna, Denver, Colorado;
Neeti Pawar, LLC, Neeti Pawar, Denver,
Colorado, for Appellee

Opinion by JUDGE FOX

¶ 1 In this post-dissolution of marriage action between Nancy L. Dorsey (wife) and John Dorsey (husband), wife appeals from the district court's determination that the parties' dispute over the property distribution payment husband owed under their separation agreement was arbitrable, and from its denial of her subsequent motion to vacate the arbitration award. We affirm.

I. Background

¶ 2 The parties' marriage ended in 2007, and they entered into a separation agreement dividing their marital property and debt, and resolving maintenance and attorney fees. As relevant here, under the property division, husband agreed to pay wife a total of $4 million, in installment payments of (no less than) $40,000 a month for fifty-nine months, and the balance by December 20, 2011. Husband was entitled to reimbursement for certain expenses he incurred in selling the parties' properties and facilitating

wife's purchase of her new home, and to apply any proceeds from the sale of property that was awarded to him toward the amount owed to wife.

¶ 3 Section 10.13 of the agreement, entitled "Dispute Resolution," provided:

The Parties agree that they will attempt to settle any claim or controversy arising out of or as a result of their dissolution of marriage through consultation and in the spirit of mutual cooperation. If such attempts fail, the specific dispute will be identified in writing and shall be mediated. . . .

If mediation shall be unsuccessful and if still unresolved, the dispute shall then be arbitrated. . . . [And] the Mediator/Arbiter shall resolve the dispute or controversy pursuant to C.R.S. § 13–22–201 et seq.

¶ 4 When the end of the installment payment period approached, the parties were unable to agree on the expenses for which husband was entitled to a credit, and therefore what amount he owed to wife as a final payment under the agreement. After wife refused to mediate/arbitrate the unresolved issue, husband asked the district court to direct the parties to mediate/arbitrate pursuant to section 10.13 of their agreement.

¶ 5 Wife objected and asked the court to compel the final property payment that she ·contended was due. She argued, as she does on appeal, that mediation/arbitration of the parties' dispute was not required because of section 10.8 of the agreement. This section, entitled "Governing Law and Jurisdiction," provided:

This Agreement shall be interpreted, governed and enforced in accordance with the laws of the State of Colorado, and the ﹐District Court of the City and County of Denver, State of Colorado shall have exclusive and·continuing jurisdiction over matters relating to the interpretation and enforcement of this Agreement.

¶ 6 The district court rejected wife's argument and ordered the parties to mediate/arbitrate. See § 13–22–206(2), C.R.S.2013 (court decides whether a controversy is subject to an arbitration agreement). The parties did so, and the arbitrator entered an

award resolving their dispute concerning the final amount owed. Wife then moved to vacate the award, under section 13–22–223(1)(d), C.R.S.2013, contending that the arbitrator exceeded her authority by interpreting the separation agreement. The court denied the motion and confirmed the arbitrator's award under section 13–22–222(1), C.R.S.2013, finding that the arbitrator was empowered to determine the parties' dispute, and that the court had properly interpreted the separation agreement by ordering the parties to mediate/arbitrate under section 10.13.

## II. Motion to Dismiss

¶ 7 Because the district court's order confirming the arbitrator's award is final and appealable under section 13–22–228(1)(c), C.R.S.2013, we deny husband's motion to dismiss the appeal. We reject his argument that wife's failure to allege the existence of a final judgment in her notice of appeal requires dismissal. Cf. SMLL, L.L.C. v. Daly, 128 P.3d 266, 270 (Colo.App.2005) ("[T]he actions of the parties to a suit are immaterial to the determination of whether a court's order constitutes a final judgment for purposes of appeal.").

## III. Arbitrability

¶ 8 Wife contends that the district court erred by ordering the parties to mediate/arbitrate under section 10.13 of their separation agreement, and that the arbitrator exceeded her authority by rendering a decision interpreting the property provisions of the agreement. We disagree with both contentions.

### A. Legal Standards

¶ 9 Whether an agreement to arbitrate exists is a legal question subject to de novo review on appeal. Lane v. Urgitus, ·145 P.3d 672, 677 (Colo.2006). To determine whether a particular dispute is arbitrable, we must examine the plain wording of the parties' arbitration agreement to ascertain and give effect to their mutual intent. Id.; see also In re Marriage of Popack, 998 P.2d 464, 467 (Colo.App.2000).

¶ 10 Arbitration is a favored method of dispute resolution. *Lane,* 145 P.3d at 678; *see BFN–Greeley, LLC v. Adair Grp., Inc.,* 141 P.3d 937, 939 (Colo.App.2006) ("Colorado encourages the settlement of disputes through arbitration."); *see also* § 13–22–206(1) (an agreement to arbitrate "is valid, enforceable, and irrevocable" except on grounds for revocation of a contract). Accordingly, if the parties' agreement is ambiguous, we apply a presumption in favor of arbitration, and resolve any doubts about the scope of the arbitration clause in favor of requiring arbitration. *See Lane,* 145 P.3d at 678; *see also City & Cnty. of Denver v. Dist. Court,* 939 P.2d 1353, 1363–64 (Colo.1997) (under the "strong public policy of encouraging alternative dispute resolution," a district court must compel arbitration unless it can say with positive assurance that the arbitration clause " 'is not susceptible of any interpretation that encompasses the subject matter of the dispute' " (quoting *Jefferson Cnty. Sch. Dist. No. R–1 v. Shorey,* 826 P.2d 830, 840 (Colo.1992))); *In re Marriage of Popack,* 998 P.2d at 467 ("All doubts [about] whether a dispute is arbitrable are to be resolved in favor of arbitration.").

¶ 11 An arbitrator lacks jurisdiction to decide an issue outside the scope of an arbitration agreement, however. When an arbitration clause is "expressly of limited scope," a court may be able to say with positive assurance that particular matters are not encompassed by the clause. *Radil v. Nat'l Union Fire Ins. Co.,* 233 P.3d 688, 693–94 (Colo.2010); *see also Magenis v. Bruner,* 187 P.3d 1222, 1224 (Colo.App.2008) ("The powers of an arbitrator derive from the arbitration agreement between the parties and are strictly defined by the terms of that agreement.").

¶ 12 A court must vacate an arbitration award when the arbitrator has exceeded his or her authority. § 13–22–223(1)(d); *BFN–Greeley,* 141 P.3d at 940; *see Magenis,* 187 P.3d at 1225–26 (when an agreement mandated an award of reasonable attorney fees to the prevailing party, the arbitrator exceeded his authority by declining to award fees; the agreement empowered the arbitrator only to determine a reasonable amount of the prevailing party's fees).

## B. Analysis

¶ 13 The section 10.13 arbitration clause is exceedingly broad in scope in that it encompasses "any claim or controversy arising out of or as a result of [the parties'] dissolution of marriage." *See Smith v. Multi–Fin. Sec. Corp.,* 171 P.3d 1267, 1270 (Colo. App.2007) ("When an arbitration clause uses the phrase 'arising out of' ..., it is broad in scope."); *see also In re Marriage of Popack,* 998 P.2d at 465–67 (concluding that an agreement providing that "[i]f any future issues arise relating to the marriage both parties agree" to submit the issue to rabbinical arbitration evidenced an unambiguous intent by the parties to arbitrate all matters related to their marriage, present or future). The presumption favoring arbitration is strongest when the language of the arbitration agreement is broad or unrestricted. *Allen v. Pacheco,* 71 P.3d 375, 379 (Colo.2003); *see also City & Cnty. of Denver,* 939 P.2d at 1364. Accordingly, because the parties' dispute over the amount husband owes as a final property distribution payment under the separation agreement indisputably arose out of the parties' dissolution of marriage, the dispute is arbitrable under section 10.13's broad language.

¶ 14 Wife's argument that section 10.8 limits the broad language of the arbitration clause is unpersuasive. Section 10.8 expressly addresses "governing law and jurisdiction," not "dispute resolution," as section 10.13 does. A choice of law or choice of forum provision, like section 10.8, does not supersede an arbitration clause. *See Ahluwalia v. QFA Royalties, LLC,* 226 P.3d 1093, 1099 (Colo.App.2009). In *Ahluwalia,* the parties entered into a restaurant franchise agreement mandating arbitration. *Id.* at 1096. Subsequent versions of the agreement entered three years later, however, designated Colorado courts as the forum to resolve any disputes arising between the parties, and did not reference the earlier arbitration provision. *Id.*

¶ 15 A division of this court affirmed the district court's ruling that the parties' dis-

pute was arbitrable, citing *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir.2005), which held that an arbitration clause is not nullified by a later agreement containing a forum selection clause unless the forum selection clause specifically precludes arbitration, and that if the two agreements can be interpreted to permit arbitration, the court must choose that interpretation. *Ahluwalia*, 226 P.3d at 1099; *see also Pers. Sec. & Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 396 n. 11 (5th Cir. 2002); *UBS Fin. Servs., Inc. v. Carilion Clinic*, 880 F.Supp.2d 724, 732 (E.D.Va.2012); *Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F.Supp.2d 410, 435 (S.D.N.Y. 2012).

¶ 16 Courts have interpreted forum selection clauses as not inherently inconsistent with arbitration clauses contained in the same agreement or in a separate agreement between the same parties, recognizing that arbitrating parties may choose to designate a judicial forum in which to compel arbitration and, if necessary, enforce the resulting award. *See Bank Julius Baer & Co.*, 424 F.3d at 284–85; *Pers. Sec. & Safety Sys., Inc.*, 297 F.3d at 395–96; *Glencore*, 848 F.Supp.2d at 433–34; *ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, 487 F.Supp.2d 980, 988–89 (N.D.Ill.2007); *see also* § 13–22–226, C.R.S.2013 (a court having jurisdiction over the controversy and parties may enforce an agreement to arbitrate and enter judgment on the award).

¶ 17 We acknowledge that the United States District Court for the District of Colorado recently held that contract language designating the state and federal courts of Colorado as having exclusive jurisdiction to determine all claims and disputes was inconsistent with language in a separate agreement requiring that all disputes be resolved by arbitration. *See PDX Pro Co., Inc. v. Dish Network, LLC*, No. 12–CV–01699–RBJ, 2013 WL 3296539, at *3, *4 (D.Colo. July 1, 2013). Although the *PDX Pro Co.* court ultimately concluded that the arbitration agreement controlled as to the particular dispute at issue, it distinguished *Bank Julius Baer & Co.* because the forum selection clause there was permissive, rather than mandatory, as the clause was in *PDX Pro Co. Id.* at *3, *4, *6.

¶ 18 Both *PDX Pro Co.* and *Bank Julius Baer & Co.* involved two separate agreements entered into at different times—one requiring arbitration and the other designating a particular judicial forum to resolve disputes. *See Bank Julius Baer & Co.*, 424 F.3d at 282; *PDX Pro Co.*, 2013 WL 3296539, at *1. In finding an irreconcilable conflict between the arbitration clause and the forum selection clause, the *PDX Pro Co.* court relied primarily on *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 523–25 (2d Cir.2011), in which the arbitration and forum selection clauses were found in separate agreements, and the first agreement, which required arbitration, specifically contemplated that the parties would enter into a subsequent, more formal agreement setting forth the terms of the first agreement, and other terms. *PDX Pro Co.*, 2013 WL 3296539, at *4. Yet, the second agreement did not mention the earlier arbitration requirement and required that all disputes be adjudicated in New York courts. *Applied Energetics*, 645 F.3d at 523. The second agreement also contained a merger clause identifying the specific documents that constituted the entire agreement between the parties; the first agreement was not listed. *Id.* at 523–24.

¶ 19 Accordingly, the *Applied Energetics* court concluded that the second agreement revoked the first, and thus there was no agreement to arbitrate. *Id.* at 524–26; *see also Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 922 F.Supp.2d 435, 439–44 (S.D.N.Y.2013) (similarly interpreting a second agreement containing a merger clause as supplanting the first agreement that required arbitration). The *Applied Energetics, Inc.* court distinguished *Bank Julius Baer & Co.*, noting that the court there had contemplated, as a possible scenario, the situation where parties might enter into a second agreement effectively revoking their earlier agreement to arbitrate. *Applied Energetics*, 645 F.3d at 524–25; *see also Bank Julius Baer & Co.*, 424 F.3d at 283.

¶ 20 In this case, however, the two clauses—arbitration and forum selection—al-

though mandatory, are found within the same agreement, which distinguishes this case from *PDX Pro Co.* and *Applied Energetics.* Unlike in *Applied Energetics,* on which *PDX Pro Co.* relied, there is no indication here that the parties intended for the forum selection clause, located in an earlier section of the agreement than the arbitration provision, to supersede or revoke the arbitration clause. Indeed, the property division provisions in article five of the separation agreement suggest just the opposite. Sections 5.2.A and 5.3, which require husband to repair and remediate certain marital properties for sale, and allow him to be reimbursed for his costs in doing so, provided that if the parties disagreed over terms of sale or "other material issues," the provisions of section 10.13 would control. Further, section 5.4.1(C), which required the parties to secure a loan to facilitate wife's purchase of her new home, and husband to secure funding if they could not do so, provided that disagreements concerning the matter would be governed by section 10.13.

¶ 21 Even though the arbitration and forum selection clauses here are mandatory, they are reconcilable, and the agreement as a whole can reasonably be interpreted, as the district court did, in a manner effectuating the broad arbitration provision agreed to by the parties.[1] *See, e.g., Glencore,* 848 F.Supp.2d at 433–34 (holding that a forum selection clause is not inconsistent with an arbitration clause in the same contract because arbitrating parties may choose to designate a judicial forum in which to compel arbitration and, if necessary, enforce the resulting award); *Sec. Life Ins. Co. v. Hannover Life Reassurance Co.,* 167 F.Supp.2d 1086, 1087–89 (D.Minn.2001) (same); *Internet E., Inc. v. Duro Commc'ns, Inc.,* 146 N.C.App. 401, 553 S.E.2d 84, 87–89 (2001) (same); *Gaffer Ins. Co. v. Discover Reinsur-*

*ance Co.,* 936 A.2d 1109, 1114–17 (Pa.Super.Ct.2007) (same); *New Concept Constr. Co. v. Kirbyville Consol. Indep. Sch. Dist.,* 119 S.W.3d 468, 469–71 (Tex.App.2003) (same).

¶ 22 For example, in *Sec. Life Ins. Co.,* the federal district court rejected a party's contention that because the choice of jurisdiction clause in the contract expressly applied if the other party failed to pay any amount claimed, that specific type of claim was not subject to the broad arbitration clause covering all disputes between the parties. 167 F.Supp.2d at 1088. The court in *Sec. Life Ins. Co.* noted that the purpose of choice of forum clauses in contracts is not to limit arbitrability but to obviate potential jurisdiction issues, and found that to the extent there was a conflict between such a clause and an arbitration clause, the inconsistency must be resolved in favor of arbitration. *Id.* The court reconciled the two clauses, similar to how the court did here, by interpreting the choice of forum clause as only providing a forum for a party to compel arbitration and to enforce the resulting award. *Id.* at 1089.

¶ 23 Further, if, as wife argues, section 10.8 exempts any issue involving interpretation of the separation agreement from arbitration, the section 10.13 arbitration clause would essentially be rendered meaningless because all issues involved in the parties' dissolution action—property, maintenance, and attorney fees—were resolved by the separation agreement. *See Gaffer Ins. Co.,* 936 A.2d at 1114–15 (refusing to interpret service of suit provision as eviscerating broad arbitration requirement contained in the same contract when such an interpretation would effectively render the arbitration provision meaningless); *see also Copper Mountain, Inc. v. Indus. Sys., Inc.,* 208 P.3d 692, 697 (Colo.2009) (court must interpret a contract in its entirety, harmonizing and giving effect

---

1. We conclude that we can reconcile sections 10.8 and 10.13 by reference to the language in each section. To the extent either party claims that these two sections conflict, perhaps more careful drafting could have avoided the alleged conflict although not the result here. In any event, because section 10.13 gives every indication that it was specifically drafted to apply to disputes in *this* dissolution action, while section 10.8 appears to have been boilerplate language

imported from other general contract provisions, we give section 10.13 more weight. *See Greenberg v. Life Ins. Co. of Virginia,* 177 F.3d 507, 519 (6th Cir.1999) (recognizing that Ohio law holds that when there exists a conflict between specific information and general boilerplate language in a contract, precedence must be given to the specific information or language); *accord H & W Indus., Inc. v. Occidental Chem. Corp.,* 911 F.2d 1118, 1123 (5th Cir.1990).

to all provisions so that none is rendered meaningless).

¶ 24 Because we affirm the district court's arbitrability determination, we do not address wife's contentions concerning the merits of the arbitrator's award, including that the arbitrator should have awarded her default interest on husband's final payment. *See Treadwell v. Vill. Homes of Colo., Inc.*, 222 P.3d 398, 400 (Colo.App.2009) ("[W]here the parties empower an arbitrator to resolve an issue, courts may not review the merits— including issues of contract interpretation— of the arbitration decision."); *Container Tech. Corp. v. J. Gadsden Pty., Ltd.*, 781 P.2d 119, 122 (Colo.App.1989) ("[A]n unfavorable interpretation of a contract is not a basis to set aside an arbitration award.").

IV.  Appellate Attorney Fees

¶ 25 Husband requests an award of his appellate attorney fees under section 13–17–102(2), C.R.S.2013, contending that the appeal lacks substantial justification. Although wife has not prevailed on her contentions, we do not view the appeal as frivolous or otherwise lacking in substantial justification, and thus deny the request. *See Mission Denver Co. v. Pierson*, 674 P.2d 363, 365 (Colo.1984) ("Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights.").

¶ 26 The judgment is affirmed.

JUDGE J. JONES and JUDGE NAVARRO concur.