BATTAGLIA, District Judge,
concurring in part and dissenting in part:
I concur with Parts III-A and III-B of the Majority’s opinion.
I concur that the district court erroneously concluded that Goldman, Sachs & Co. (“Goldman”), as a member of the Financial Industry Regulatory Authority (“FINRA”), agreed to FINRA arbitration on the issue of arbitrability itself. Rather, courts should decide where an agreement does not provide “clear and unmistakable” evidence that the parties intended FINRA *748 would determine the issue of arbitrability. Thus, the district court erred in delegating this matter to FINRA.
I also concur with the Majority’s conclusion that a “customer” is a non-brokér and non-dealer who purchases commodities or services from a FINRA member in the course of the member’s FINRA-regulated business activities. The City of Reno (“Reno”), therefore, falls within this definition of “customer” under both the 2005 and 2006 Underwriter and Broker-Dealer Agreements.
Finally, I concur with the Majority’s finding that' parties can supersede, displace, or waive FINRA’s arbitration requirement through a subsequent agreement and that an express waiver of arbitration is unnecessary. The Majority’s adoption of the Fourth Circuit’s “sufficiently - specific” test was appropriate for determining if, in fact, the parties superseded, displaced, or waived the arbitration obligation created by FINRA Rule 12200 through- the 2005 and 2006 Broker-Dealer Agreements. However, it. is here that I diverge from my colleagues and respectfully dissent from the finding that the contracting parties’ forum selection clauses superseded Goldman’s pre-existing- obligation to arbitrate under the FINRA Rules. For the following reasons, I would affirm the district court’s finding that: “[t]he exclusive forum . selection clauses in the Broker-Dealer Agreements do not touch upon arbitration or arbitrability directly, but rather only control the forum of a court action apart from, or in review of, arbitration.” Goldman, Sachs & Co. v. City of Reno, No. 3:12-CV-00327, 2012 WL 5944966, at *4 (D.Nev. Nov. 26, 2012). As a result, I would affirm the district court’s denial of Goldman’s motion to preliminarily enjoin the FINRA arbitration.
In UBS' Financial Services, Inc. v. Car-ilion Clinic, the Fourth Circuit held that contracting parties may avoid FINRA arbitration by executing a subsequent agreement that is “sufficiently specific to impute to the contracting parties the reasonable expectation that they are superseding, displacing, or waiving the arbitration obligation created by FINRA Rule 12200.” 706 F.3d 319, 328 (4th Cir.2013) (emphasis added). As an issue of first impression - for the Ninth Circuit, I agree that adoption of this approach is appropriate. This is preferable to a narrower express waiver requirement.[1] However, as stated above, under the facts of the instant case, I do not find the forum selection clauses at issue to have sufficiently demonstrated the parties’ intent to supersede, displace, or waive arbitration.
I disagree with two aspects of the Majority’s analysis. First, I disagree with the Majority’s heavy reliance on the opinion of the Honorable Richard J. Sullivan in Goldman, Sachs & Co. v. Golden Empire Schools Financial Authority, 922 F.Supp.2d 435 (S.D.N.Y.2013). Instead, the Fourth Circuit’s Carilion Clinic is more persuasive. Second, I do not agree with the Majority’s conclusion that the phrase “all actions and proceedings,” in the forum selection clauses of the 2005 and 2006 Broker-Dealer Agreements, is “sufficiently specific” to impute to the contract *749 ing parties the reasonable expectation that they are superseding, displacing, or waiving the arbitration obligation under FIN-RA Rule 12200.
Founded in 2007, FINRA is a self-regulatory organization established under Section 15A of the Securities Exchange Act of 1934[2] and has the authority to exercise comprehensive oversight over “all securities firms that do business with the public.” Sacks v. SEC, 648 F.3d 945, 948 (9th Cir.2011) (quoting 72 Fed.Reg. 42170 (Aug. 1, 2007)). FINRA membership constitutes an agreement to “adhere to FINRA’s rules and regulations, including its Code and relevant arbitration provisions contained therein.” UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc., 660 F.3d 643, 648-49 (2d Cir.2011). By becoming a member of FINRA, Goldman agreed to submit to FINRA rules, including Rule 12200, which requires members to arbitrate disputes in connection with their business activities if and when arbitration is requested by a customer or required by a written agreement. See FINRA Rule 12200; Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 32 n. 1 (2d Cir.2010).
Therefore, although a written arbitration agreement between Goldman and Reno does not exist, “FINRA rules may establish the requisite arbitration •'agreement.” See J.P Morgan Sec. Inc. v. La. Citizens Prop. Ins. Corp., 712 F.Supp.2d 70, 76-77 (S.D.N.Y.2010). Moreover, FIN-RA Rule 12200 constitutes an agreement in writing under the Federal Arbitration Act (“FAA”) and Reno is entitled to invoke FINRA Rule 12200 as an intended third-party beneficiary. See Kidder, Peabody & Co. v. Zinsmeyer Trusts P’ship, 41 F.3d 861, 863-64 (2d Cir.1994).[3]
While this existing obligation to arbitrate under FINRA Rule 12200 exists, Goldman and Reno are nevertheless free to supersede, displace, or waive arbitration with a subsequent agreement that is “sufficiently specific.” However, even without applying the presumption in favor of arbitration, and instead using general state principles of contract interpretation, the contract language in the forum selection clauses is not “sufficiently specific” to impute to the contracting parties the reasonable expectation they are superseding, displacing, or waiving the arbitration obligation created by FINRA Rule 12200. Carilion Clinic, 706 F.3d at 328.
In applying the standard set by Carilion Clinic, the Majority relies heavily on an opinion from the Southern District of New York, agreeing with the New York district court that the phrase “all actions and proceedings” encompasses arbitration. See Golden Empire, 922 F.Supp.2d at 443. In my view, this reliance is misplaced for two reasons. First, Golden Empire failed to adhere to Second Circuit precedent directing its courts to enforce " an arbitration where a forum selection clause and an agreement to' arbitrate may be read as complementary. See Bank Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 284 (2d Cir.2005) (“Under our cases, if there is a reading of the various agreements that permits the Arbitration Clause to remain in effect, we must chose it....”). Second, Golden Empire failed to acknowledge the distinction between the phrase “any dispute” as featured in Applied Energetics and the phrase “all actions and proceed *750 ings” in the agreements presented to the district court. Golden Empire, 922 F.Supp.2d at 443 (citing Applied Energetics Inc. v. NewOak Capital Mkts., LLC, 645 F.3d 522, 525 (2011)). This led the New York district court to mischaracterize the agreements as being “all-inclusive, ... mandatory, and neither admits the possibility of the other.” Id.
In Bank Julius, the Second Circuit determined that the existence of a broad arbitration agreement creates a “presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.” 424 F.3d at 284. The parties in Bank Julius, initially agreed to arbitrate “any ... dispute” arising out of their contractual relationship then subsequently entered into an agreement omitting any mention of arbitration. Id. at 282. The subsequent agreement, however, contained a forum selection clause stating that “any Action” brought by the defendant must be in any New York State or Federal Court sitting in New York City. Id. Furthermore, the subsequent agreement contained a merger clause providing that “[t]his Agreement supersedes all prior agreements and understanding between [the parties]” but also provided that “the rights and remedies provided [herein] are cumulative and not exclusive of any rights or remedies provided under any other agreement or by law or in equity.” Id.
Under these circumstances, the Second Circuit concluded that the forum selection clause in the subsequent agreement could be read as complementary with an initial agreement to arbitrate. Id. at 284. The court noted that a subsequent agreement, such as one containing a forum selection clause and a merger clause, could not nullify an arbitration agreement unless that subsequent contract “specifically precludes arbitration.” Id. at 284 (citing Personal Sec. & Safety Sys. v. Motorola, 297 F.3d 388, 396 n. 11 (5th Cir.2002)). In analyzing the forum selection clause, the Bank Julius court concluded that “we cannot say that the Forum Selection Clause, which does not even mention arbitration, either ‘specifically precludes’ arbitration or contains a ‘positive assurance’ that this dispute is not governed by the Arbitration Agreement.” Id. The court found that there is “nothing inconsistent between the arbitration obligation and the instant forum selection clause. Both can be given effect....” Id.
Thus, “where a Forum Selection Clause can be understood ... as complementary to an agreement to arbitrate,” a court should enforce the arbitration agreement. Id. Additionally, because the forum selection clause made no reference to arbitration, the Second Circuit in Bank Julius found it to be “at least ambiguous” which requires resolution “in favor of coverage.” Id. at 285 (internal quotations omitted) (citing WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir.1997)). Golden Empire did not adhere to this Second Circuit directive and ignored the natural integration of the role and control of the forum court action, apart from, or in review of, arbitration agreements. Under the facts of Golden Empire, as well as in the instant case, the forum selection clause requiring the parties to submit to the jurisdiction of the district court for the District of Nevada “all actions and proceedings” may be read as complementary to FINRA Rule 12200 in that the parties may seek court enforcement of arbitral awards or challenge the validity or application of the arbitration agreement in court.
Of further concern is Golden Empire’s failure to recognize the distinction between the phrases “all actions and proceedings” and “any dispute.” In Bank Julius, the *751 parties first agreed to arbitrate “any ... dispute” arising out of their contractual relationship but subsequently executed an agreement in which the defendant agreed to submit “any Action” to a New York state or federal court, creating two complementary and enforceable agreements.[4] This subtle, but significant, difference in language was recognized by the Second Circuit in Applied Energetics, Inc. v. New-Oak Capital Markets, and was used to distinguish the two agreements presented to the Applied court. 645 F.3d at 525-26.
In Applied Energetics, the parties entered into two agreements diming the course of their transaction. The first, the Engagement Agreement, contained an arbitration clause stating, “[e]ach of NewOak and Applied agrees that any dispute arising out of or relating to this letter, the Indemnity Agreement and/or the transactions contemplated hereby or thereby ... shall be resolved through binding arbitration .... ” Id. at 523 (emphasis added). The second, the Placement Agreement, contained a clause providing that “[a]ny dispute arising out of this Agreement shall be adjudicated in the Supreme Court, New York County or in the federal district court for the Southern District of New York.” Id. (emphasis added). Because the two agreements used the same phrase “any dispute,” with one requiring arbitration and the other providing for adjudication in a judicial forum, the Applied Court found the case fell within the scenario contemplated by Bank Julius, “where contracting parties are free to revoke an earlier agreement to arbitrate by executing a subsequent agreement the terms of which plainly preclude arbitration.” Id. at 525. The two provisions at issue in Applied Energetics used parallel language; as a result, the Second Circuit concluded both provisions were “all-inclusive, both mandatory, and neither admits the possibility of the other.” Id.
Thus the Second Circuit in Applied Energetics found the subsequent Placement Agreement specifically precluded arbitration. Id. In arriving at this conclusion, the Second Circuit considered two factors equálly worthy of analysis here. First, the Applied Court noted that the Engagement Agreement and the Placement Agreement used “parallel language” that stood in “direct conflict” with each other. Id. As stated above, the two Agreements were all-inclusive, mandatory, and neither admitted the possibility of the other, thereby making it abundantly apparent that the subsequent agreement completely displaced the first. Id. Second, the Placement Agreement used the term “adjudicate” as a clear and unmistakable reference to judicial action. Id. Accordingly, the subsequent Placement Agreement, which completely supplanted the Engagement Agreement, exclusively contemplated judicial proceedings to resolve the parties’ dispute. These two factors were a part of the basis for the Second Circuit’s conclusion. However, these two factors did not exist in Golden Empire, nor do they exist in the instant matter, and the court in Golden Empire failed to recognize these important distinctions'.
Accordingly, I disagree with Golden Empire's conclusion that FINRA Rule 12200 and the Broker-Dealer Agreements’ forum selection clauses were “all inclusive, ... mandatory, and neither admits the possibility of the other.” Golden Empire, 922 F.Supp.2d at 443 (ellipsis in original). Indeed, the contract language at issue in Golden Empire, and substantially the same language at issue here, is more akin to that found in Bank Julius, 424 F.3d at *752 282. FINRA Rule 12200 provides that a “dispute” must be arbitrated if the customer so requests or is required by writing, whereas the Broker-Dealer Agreements’ forum selection clauses provide that “all actions and proceedings” must be brought in a judicial forum. Enforcement of both is possible as the two provisions may be read as complementary. Next, the Golden Empire court, and the Majority here, concluded that FINRA Rule 12200 and the forum selection clause are both mandatory and neither admits the possibility of the other; I respectfully disagree. Despite the use of the obligatory verb “must” in FINRA Rule 12200, the duty to arbitrate is only triggered when one of two conditions are met, if indeed they are ever met. Yet the court in Golden Empire failed to recognize that the duty to arbitrate may never be triggered if a written agreement does not provide for it or if the customer does not request it. If neither conditions occurs, the parties may proceed in a judicial forum without any obligation to arbitrate. Thus, Golden Empire’s characterization of FIN-RA Rule 12200 and the forum selection clause as all-inclusive, mandatory, and mutually exclusive was incorrect.
Moreover, the forum selection clauses contained within the 2005 and 2006 Broker-Dealer Agreements are not sufficiently specific to impute the reasonable expectation that they were intended to supersede, displace, or waive the arbitration obligation created by FINRA Rule 12200. The Fourth Circuit reached the same conclusion in Carilion Clinic when analyzing the language of a forum selection clause nearly identical to the forum selection clauses at issue here. 706 F.3d at 829. The forum selection clause in Carilion Clinic provided that “all actions and proceedings shall be brought in the United States District Court in the County of New York,” then expressly waived the parties’ right to trial by jury. Id. The Fourth Circuit provided a thorough and well-reasoned analysis of the adequacy of the forum selection clause and concluded the clause failed to meet the “sufficiently specific” standard as it made no suggestion of the parties’ intent to supersede, displace, or waive the right to FIN-RA arbitration. Id. at 330. The Majority here dismisses the Fourth Circuit’s reasoning and instead fully adopts the analysis set forth in Golden Empire.
As a result, the Majority agrees with Golden Empire and finds that there is no evidence the parties intended the phrase “actions and proceedings” to have a technical meaning limited to only those actions and proceedings that may be brought in a judicial forum. It is unsurprising that many courts and even FINRA have referred to arbitration as a “proceeding.” It is undeniable that arbitration is referred to as an “action” or a “proceeding” in common parlance. Indeed, there are only so many ways we can refer to a course of events or action. While the Majority references to a number of sources that refer to arbitration as an “action” or a “proceeding,” it is also possible to find sources limiting “actions and proceedings” to those brought in a judicial forum.
For instance, an “action” in the legal sense is defined as “[a] civil or criminal judicial proceeding.”[5] Black’s Law Dictio *753 nary 31 (8th ed.2004); see also Black’s Law Dictionary 28 (6th ed.1990) (“A lawsuit brought in a court, a formal complaint within the jurisdiction of a court of law ... that includes all the formal proceedings in a court of justice.... ”). The phrase “all actions and proceedings” also appears in Rule 1 of the Federal Rules of Civil Procedure, which governs civil actions and proceedings in the United States district courts. Fed.R.Civ.P. 1. Rule 1 explicitly refers to actions and proceedings as those brought in a judicial forum, from which arbitrations are precluded. Section 3 of the Federal Arbitration Act (“FAA”) allows parties with a valid arbitration agreement to apply for a stay in “any suit or proceeding” that has been brought into any of the courts of the United States. 9 U.S.C. § 3 (emphasis added). Here, the FAA undoubtedly refers to “proceedings” as meaning those proceedings brought in a judicial forum; consequently, “proceedings” under the language of the FAA does not encompass arbitration.
In light of the above ambiguities, it is obvious why the parties have sought judicial resolution on the issue of whether the forum selection clause superseded, displaced, or waived the arbitration requirement under FINRA. While not disposi-tive, it is important to be mindful of the sophistication of the parties involved, both undoubtedly represented by skilled counsel in negotiating, forming, and executing the Agreements at issue in an arm-length transaction. While it may be that it is “common parlance” to refer to arbitrations as an action or a proceeding, it is equally reasonable to conclude that the parties intended the phrase to denote its technical and legal meaning that excludes arbitration. With two reasonable interpretations possible, we must look to the contract itself to determine the parties’ intent.
“In interpreting a contract, ‘the document must be read as a whole to determine the parties’ purpose and intent, giving a practical interpretation to the language employed so that the parties’ reasonable expectations are realized.’ ” Queens Best, LLC v. Brazal S. Holdings, LLC, 35 A.D.3d 695, 696-97, 826 N.Y.S.2d 684 (N.Y.App.Div.2006) (quoting Snug Harbor Square Venture v. Never Home Laundry, Inc., 252 A.D.2d 520, 521, 675 N.Y.S.2d 365 (N.Y.App.Div.1998)); see also Beal Sav. Bank v. Sommer, 8 N.Y.3d 318, 324-25, 834 N.Y.S.2d 44, 865 N.E.2d 1210 (N.Y.2007) (“Further, a contract should be read as a whole and every part will be interpreted with reference to the whole and if possible it will be so interpreted as to give effect to its general purpose.” (internal quotation marks and citation omitted)).[6] After the initial language regarding the District of Nevada as the forum for all actions and proceedings, the forum selection clause goes on to state “[e]ach of the parties hereto also irrevocably waives all right to trial by jury in any action, proceeding or counterclaim arising out of this Broker-Dealer Agreement or the transactions contemplated hereby.” Therefore, simply referencing this next sentence suggests that the phrase “all actions and proceedings” refers to only those brought in a judicial forum, the only forum in which a jury may sit. See Carilion Clinic, 706 F.3d at 329-30 *754 (“The more reasonable construction would take the references to ‘court’ and ‘jury trials’ as limiting what is meant by ‘actions and proceedings.’ Thus read in the context of courts and jury trials, the terms ‘actions and proceedings’ would be understood as a term of art....”).
Furthermore, if contract clauses appear to be repugnant to each other, the court should, interpret the contract “in a way which reconciles all its provisions, if possible.” Green Harbour Homeowners’ Assn., Inc. v. G.H. Dev. & Constr., Inc., 14 A.D.3d 963, 965, 789 N.Y.S.2d 319 (N.Y.App.Div.2005). Here, although we are dealing with the specific phrase “actions and proceedings” within a forum selection clause, the same principles of contract interpretation are relevant. If “actions and proceedings” includes arbitration, then the provision suggests arbitration remains available but must be brought in court. Such a reading renders the entire sentence contradictory as arbitrations may not be pursued in courts as a general rule. The Fourth Circuit, arrived at this same conclusion, noting the “problems inherent in this logical construct.” Carilion Clinic, 706 F.3d at 329. To reconcile the entire sentence, “all actions arid proceedings” must be read to mean only judicial actions and proceedings. Moreover, we should not read a contract in a way that would render ' any portion meaningless. CNR Healthcare Network, Inc. v. 86 Lefferts Corp., 59 A.D.3d 486, 489, 874 N.Y.S.2d 174 (N.Y.App.Div.2009). Again, the suggestion that “actions and proceedings” includes arbitration results in a nonsensical reading of the remaining portion of the forum selection clause as the language suggests arbitration should be brought in a judicial forum with the parties waiving all rights to a trial by jury in the “action” or “proceeding.” See Carilion Clinic, 706 F.3d at 329. As an arbitration may not be brought in a judicial forum and arbitration does not include a right to a jury trial, an interpretation of “actions and proceedings” as including arbitration results in an illogical reading of the entire provision.
With these considerations in mind, I would agree with the Fourth Circuit in Carilion Clinic that “it would never cross a reader’s mind that the [forum selection] clause provides that the right to FINRA arbitration was being, superseded or waived.” Id. at 330. Given the broad right a customer has to seek arbitration under FINRA Rule 12200, the forum selection clauses in the Broker-Dealer Agreements falls far short of providing “sufficiently specific” language to impute to the contracting parties the reasonable expectation that FINRA’s arbitration requirement has been superseded, displaced, or waived. Accordingly, I would affirm the district court’s denial of Goldman’s motion for preliminary injunction.

. Similarly, the Second Circuit will find FIN-RA arbitration waived where contracting parties execute a "subsequent agreement the terms of which plainly preclude arbitration,” but will enforce arbitration if the contractual provision can possibly be read as complementary to FINRA’s arbitration requirement. Applied Energetics, Inc. v. NewOak Capital Mkts., LLC, 645 F.3d 522, 525 (2d Cir.2011) (citing Bank ‘Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 281 (2d Cir.2005)).

. 15 U.S.C. § 780-3; Karsner v. Lothian, 532 F.3d 876, 879 n. 1 (D.C.Cir.2008); SEC Release No. 34-56145 (July 26, 2007).

. Though not addressing FINRA rules themselves, Kidder considered the rules and regulations of the National Association of Securities Dealers, Inc. (‘'NASD”), the predecessor of FINRA.

. Similarly, the parties in Golden Empire were obligated to arbitrate "a dispute” under FINRA Rule 12200 should Golden Empire, as a customer, so request.

. This broad definition is supported by the following reason:
An action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.... More accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or de *753 cree. The action is said to terminate at judgment.
Black's Law Dictionary 31 (8th ed.2004) (quoting 1 Morris M. Estee, Estee’s Pleadings, Practice, and Forms § 3, at 1 (Carter P. Pom-eroy ed., 3d ed.1885)).

. Section 5.09 of the 2005 and 2006 Broker-Dealer Agreements provides that this "Agreement shall be governed by and construed in accordance with the laws of the State of New York....”