14-341 (L)
Offshore Exploration v. Morgan Stanley

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of September, two thousand fifteen.

PRESENT:

> GERARD E. LYNCH,
> RAYMOND J. LOHIER, JR.,
> SUSAN L. CARNEY,
> *Circuit Judges.*

_____

OFFSHORE EXPLORATION AND PRODUCTION, LLC,

> *Plaintiff-Appellant*,

v.                                                           No. 14-341

MORGAN STANLEY PRIVATE BANK, N.A., as
Successor to Morgan Stanley Trust, N.A.,
ECOPETROL S.A., and
KOREA NATIONAL OIL CORPORATION,

> *Defendants-Appellees*.

_____

ECOPETROL S.A., and
KOREA NATIONAL OIL CORPORATION,

> *Petitioners-Cross-Respondents-Appellees*,

v.                                                           No. 14-3394

OFFSHORE EXPLORATION AND PRODUCTION, LLC,

*Respondent-Cross-Petitioner-Appellant.*

_____

FOR APPELLANT:                        SANFORD I. WEISBURST, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY (Peter E. Calamari and Cleland B. Welton, II, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, and David M. Orta, Quinn Emanuel Urquhart & Sullivan, LLP, Washington, D.C., *on the brief*).

FOR APPELLEE KOREA NATIONAL OIL CORPORATION:        MARK P. GIMBEL, Covington & Burling LLP, New York, NY (Colin P. Watson, Covington & Burling LLP, New York, NY, and Miguel López Forastier, Covington & Burling LLP, Washington, D.C., *on the brief*).

FOR APPELLEE ECOPETROL S.A.:        Scott A. Chesin and Allison M. Stowell, Mayer Brown LLP, New York, NY.

Appeal from two judgments of the United States District Court for the Southern District of New York (John G. Koeltl, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments are **AFFIRMED**.

This case arises from a Stock Purchase Agreement ("SPA") pursuant to which Offshore Exploration and Production, LLC ("Offshore") sold a subsidiary company to Korea National Oil Corporation and Ecopetrol S.A. (collectively, the "Purchasers"), and from a separately executed Indemnification Escrow Agreement (the "Escrow

Agreement") between the parties governing the administration of a portion of the purchase price placed in escrow. The escrow account is administered by Morgan Stanley Trust, N.A. ("Morgan Stanley")[1] and serves as security for indemnification claims of the Purchasers against Offshore that might arise under the terms of the SPA.

Offshore appeals from two judgments of the district court, entered December 26, 2013, and September 12, 2014, respectively. In its complaint leading to the first of those judgments, Offshore sought a declaratory judgment that under the terms of the Escrow Agreement it could require Morgan Stanley to release $75 million to satisfy the Purchasers' claim for indemnification for a tax payment demanded of the purchased subsidiary by the government of Peru, despite the Purchasers' insistence that the claim be paid with non-escrowed funds. The district court determined that that question implicated the terms of the SPA, and therefore fell within the parties' agreement to arbitrate all disputes "arising out of or relating to" the SPA, J.A. 119, which includes the question of whether a dispute is arbitrable. Accordingly, the district court stayed the action pending arbitration, leaving it to arbitrators to decide the arbitrability of the dispute.

In its second order, the district court confirmed two arbitral awards that ruled that: (i) under the SPA, Offshore must advance $75 million to the Purchasers while the underlying tax dispute remained pending; (ii) whether Offshore could require that the $75

---

[1] Morgan Stanley has not filed a brief in this appeal.

million be paid with escrowed funds was an arbitrable question that arose under the SPA; and (iii) given the Purchasers' withdrawal of their demand for the release of escrowed funds, Offshore was required to pay the indemnification claim with non-escrowed funds. We assume the parties' familiarity with the facts and procedural history.

1.    Arbitrability

Offshore contends that the district court erred in ruling that the arbitrability of its claim regarding the use of escrowed funds was itself an arbitrable question.  Under the Federal Arbitration Act, 9 U.S.C. § 1, et seq., "there is a general presumption that the issue of arbitrability should be resolved by the courts," but that presumption may be overcome by "clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." Contec Corp. v. Remote Solution, Co., 398 F.3d 205, 208 (2d Cir. 2005) (emphasis omitted).  Applying New York law, which governs the SPA, we have found such "clear and unmistakable evidence" where, as here, an arbitration clause covers all disputes arising under an agreement and "explicitly incorporate[s] rules that empower an arbitrator to decide issues of arbitrability." Id.; accord PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1202 (2d Cir. 1996).

Offshore first argues that its request for a declaratory judgment does not arise under or relate to the SPA, and therefore does not fall within its agreement to arbitrate, because it concerns solely the interpretation of the Escrow Agreement, which does not contain an arbitration clause.  According to Offshore, the conditions under the Escrow

4

Agreement for Morgan Stanley to release the $75 million were satisfied once Offshore withdrew its objection to the Purchasers' prior claim for that amount in escrowed funds, regardless of the parties' rights under the SPA.

We disagree. Literally construed, the Escrow Agreement's conditions for release are not satisfied, because that agreement provides that once Offshore has objected to the Purchasers' claim to escrowed funds, Morgan Stanley may release those funds only upon (i) instructions jointly submitted by Offshore and the Purchasers, or (ii) a certificate submitted by the Purchasers that includes an arbitral award confirming the Purchasers' entitlement to such funds, neither of which have been submitted. To prevail on its claim, Offshore would need to establish that, despite that literal construction, its withdrawn objection should be treated as one that never occurred. That argument would require an examination of the purpose of the escrow account in context of the underlying transaction, which would, in turn, implicate the parties' rights under the SPA.[2]

Offshore next argues that, even if its claim arises under or relates to the SPA, the arbitrability of its claim was nevertheless not for the arbitrators to decide because the Escrow Agreement carves out disputes arising under it from the parties' agreement to

---

[2] Two provisions of the SPA are particularly implicated. First, § 8.6 of the SPA states that the Purchasers' assertion of a claim against the escrow account shall not "constitute an election of remedies or limit [the Purchasers] in any manner in the enforcement of any other remedies." J.A. 115. Second, that same section provides that if Offshore "disputes the [Purchasers'] claim [to escrowed funds] . . ., the amount of the disputed set-off shall remain in escrow pending a final determination of such dispute." Id.

5

arbitrate all disputes under the SPA. That argument is based on two provisions of the Escrow Agreement: a forum selection clause stating that each party "consents to the jurisdiction of the courts located in the State of New York," and a supremacy clause stating that "[i]n the event of any discrepancy or inconsistency between the provisions of [the Escrow Agreement] and the provisions of the [SPA], the provisions [of the Escrow Agreement] shall prevail," J.A. 31-32. Offshore maintains that the parties' consent to jurisdiction in New York courts conflicts with their agreement to arbitrate under the SPA, and that because of the supremacy clause that conflict must be resolved against arbitration.

That argument fails because the SPA and the Escrow Agreement are not in conflict, and the Escrow Agreement does not limit or supersede the parties' agreement to arbitrate all disputes under the SPA. "[A]n agreement to arbitrate is superseded by a later-executed agreement containing a forum selection clause if the clause 'specifically precludes' arbitration, but there is no requirement that the forum selection clause mention arbitration." Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth., 764 F.3d 210, 215 (2d Cir. 2014) (internal quotations marks and citation omitted). We have contrasted forum selection clauses in subsequent agreements that are permissive, in which the parties "simply waived objection to jurisdiction in New York," with those that are "all-inclusive and mandatory." Id. at 215-16, comparing Bank Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 284 (2d Cir. 2005), with Applied Energetics, Inc. v. NewOak Capital Mkts., LLC, 645 F.3d 522, 526 (2d Cir. 2011). In the latter case arbitration is specifically

6

precluded, but in the former case the forum selection clause "should be read 'as complementary to [the] agreement to arbitrate.'" Golden Empire, 764 F.3d at 215, citing Bank Julius, 424 F.3d at 285.

Here, the forum selection clause is not all-inclusive or mandatory, and it should therefore be read as complementary; the parties merely consented to the jurisdiction of courts in New York for those disputes under the Escrow Agreement that they did not agree to arbitrate under the SPA. And because the two agreements do not conflict, the Escrow Agreement's supremacy clause is not implicated. Accordingly, the district court did not err in ruling that the question of the arbitrability of the parties' dispute was itself arbitrable.

2. Finality and Completeness

Offshore also argues that the district court erred in confirming the two arbitration awards because those awards are not sufficiently final or complete. For an arbitration award to be confirmed by a court, it "must resolve all the issues submitted to arbitration, and . . . must resolve them definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., 157 F.3d 174, 176 (2d Cir. 1998) (emphasis omitted). Offshore contends that the arbitrators' ruling that it must pay the Purchasers the $75 million indemnification claim from non-escrowed funds pending resolution of the underlying tax dispute is not a "final" award because it resolves the parties' rights only for an interim period and leaves open the possibility that the

7

amount of indemnification will be modified once the tax dispute between the subsidiary and Peru is resolved.

But Offshore's conception of finality is too narrow. While the arbitration awards do not finally settle the indemnification claim, they have settled with finality the issue that the parties submitted for arbitration – namely, the parties' obligations under the SPA while the tax dispute in Peru remains pending. "Such an award is not 'interim' in the sense of being an 'intermediate' step toward a further end. Rather, it is an end in itself, for its very purpose is to clarify the parties' rights in the 'interim' period pending a final decision on the merits." S. Seas Navigation Ltd. of Monrovia v. Petroleos Mexicanos of Mex. City, 606 F. Supp. 692, 694 (S.D.N.Y. 1985) (Weinfeld, J.).[3]

Lastly, Offshore argues that the arbitration awards are not complete because the arbitrators failed to rule on Offshore's request for an additional ruling that, if it paid the $75 million from non-escrowed funds, it would be entitled to reimbursement of those funds from the escrow account. But Offshore's request does not remain pending in arbitration; rather, the arbitrators "declin[ed] to issue further rulings or awards in response to [Offshore's] Petition." J.A. 848. That ruling is most reasonably construed as a rejection of Offshore's reimbursement argument. In any event, a failure to rule on the reimbursement issue would not render the awards incomplete, because there is no doubt

---

[3] While not dispositive, it bears noting that the SPA's arbitration clause provides that "any provisional measures ordered by the arbitrators may, to the extent permitted by applicable law, be deemed to be a final award on the subject matter of the measures and shall be enforceable as such." J.A. 119.

as to "what [the court] is being asked to enforce," <u>Rich v. Spartis</u>, 516 F.3d 75, 83 (2d Cir. 2008) (internal quotation marks omitted) – namely, that Offshore must pay the $75 million from non-escrowed funds.

We have considered all of Offshore's remaining arguments and find them to be without merit.  Accordingly, the judgments of the district court are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk