PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2953
_____

MEGHAN YOUNG, individually and on behalf of all others
similarly situated

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,
                                        Appellant
_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 3-23-cv-03312)
District Judge:  Honorable Michael A. Shipp
_____

Argued
June 24, 2024

Before:   JORDAN, McKEE, and AMBRO, *Circuit Judges*

(Filed: October 17, 2024)
_____

Caleb P. Redmond
Jacob M. Roth   [ARGUED]
Jones Day
51 Louisiana Avenue NW
Washington, DC   20001
      *Counsel for Appellant*

Yitzchak Zelman   [ARGUED]
Marcus & Zelman
701 Cookman Avenue
Suite 300
Asbury Park, NJ   07712
      *Counsel for Appellee*

————————————

## OPINION OF THE COURT

————————————

JORDAN, *Circuit Judge*.

After being denied a mortgage loan because of an erroneous credit report prepared by Experian Information Solutions, Inc. ("Experian"), Meghan Young sued Experian for violations of the Fair Credit Reporting Act.  In response, Experian filed a motion to compel arbitration based on a later-signed agreement that Young had with CreditWorks, an Experian affiliate.  Applying our precedent in *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013), the District Court denied the motion to compel without prejudice and granted leave for Experian to re-file a motion to compel arbitration after a short period of discovery on the issue of arbitrability.  Experian argues, however, that such discovery is not required when, as in this case, the existence and validity

2

of the arbitration agreement are not at issue and any disputes over enforceability or arbitrability are themselves delegated to the arbitrator. We agree and take this opportunity to clarify our ruling in *Guidotti* for application in circumstances such as this. Accordingly, we will vacate and remand the District Court's order.

## I.    BACKGROUND

### A.    Factual Background

In February 2023, Young contacted a mortgage broker for a loan. The broker denied Young's application because Experian inaccurately reported that mortgage foreclosure proceedings had been initiated against her in March 2023, when in fact she had paid her home loan in full in June 2021. Sometime after her 2023 mortgage loan application was denied, Young downloaded her credit reports from Experian and another credit agency, Equifax. Both reports showed that the mortgage on her house was satisfied. Experian, however, flagged its report with an "FS," which stands for "[f]oreclosure proceedings started." (J.A. at 13.) Because Young was not in foreclosure proceedings, and her mortgage was paid off, the Experian report was false.

Whether as a matter of coincidence or in response to Experian's false credit report, in April 2023, Young enrolled in a credit monitoring service called CreditWorks, which, as it turns out, is related to Experian. CreditWorks is operated by Experian Consumer Services ("ECS"), doing business as Consumerinfo.com, and Experian is a subsidiary of ECS.

3

To sign up for her CreditWorks account, Young completed a "single webform" that "required [her] to enter her personal information," including "her name, address, phone number, and e-mail address," and to click the "Create Your Account" button. (J.A. at 50.) Below the boxes for entering an email address and password was a disclosure that said: "By clicking 'Create Your Account': I accept and agree to [the] Terms of Use Agreement, as well as acknowledge receipt of [the] Privacy Policy and Ad Targeting Policy." (J.A. at 50-51.) Thus, by creating a CreditWorks account, Young arguably agreed to CreditWorks' Terms of Use, which included an arbitration agreement.[1]

The arbitration agreement states that Young and ECS, or its affiliates, "including but, not limited to[] Experian[,]" "agree to arbitrate all disputes and claims between [them] that arise out of or relate to [the] Agreement, which includes any

---

[1] The phrase "Terms of Use" in the disclosure was linked to a pop-up window containing the entire text of the agreement. We have no occasion now to consider the binding effect of this type of pop-up and click-through contract, as Young acknowledges the contract exists. *See infra* at pp. 15.

Information[2] [Young] obtain[s] through the Services[3] or Websites[.]" (J.A. at 56, 63.) Additionally, the agreement declares that it should "be broadly interpreted" to make

2 The term "Information" in the Terms of Use means:

> [A]ny credit, personal, financial or other information delivered to you as part of, or in conjunction with, the Services, including any such information that may be archived to the extent made available on the Websites, including (i) for your purchase of non-membership based Services such as the 3 Bureau Credit Report and FICO® Scores, the FICO Industry or other Base FICO Scores and/or an Experian Credit Report and FICO Score, (ii) enrollment and use of free Services (such as EXPERIAN CREDITWORKS Basic), and/or enrollment, purchase and use of membership based Services (such as EXPERIAN CREDITWORKS Premium, Experian IdentityWorks, or Experian Credit Tracker); and (iii) your access to and use of calculators, credit resources, text, pictures, graphics, logos, button items, icons, images, works of authorship and other information and all revisions, modifications, and enhancements thereto contained in the Websites.

(J.A. at 63.)

arbitrable "all disputes and claims between [Young and ECS] relating to, or arising out of, [the] Agreement, any Service and/or Website, including any Information [Young] obtained through the Services or Websites, … to the fullest extent permitted by law." (J.A. at 63.) By its terms, the arbitration provision covers "claims arising out of or relating to any aspect of the relationship between [ECS and Young,]" including those brought under the Fair Credit Reporting Act, and "claims that arose before this or any prior Agreement … and … that may arise after the termination of this Agreement." (J.A. at 63.)

The arbitration agreement also includes a delegation clause, which provides that "[a]ll issues are for the arbitrator to

---

[3] The term "Service" in the Terms of Use,

> includes, but is not limited to, the provision of any of [ECS's] products and services, including credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking … , the receipt of any alerts notifying [Young] of changes to the information contained in [Young's] credit report(s), regardless of the manner in which [Young] receive[s] the Services, whether by email or mail, through a website or mobile application, by telephone, or through any other mechanism by which a Service is delivered or provided to [Young].

(J.A. at 56.)

6

decide" and specifically grants to the arbitrator "exclusive authority to resolve" the following:

> (i) all issues regarding arbitrability, (ii) the scope and enforceability of [the] arbitration provision as well as the Agreement's other terms and conditions, (iii) whether [Young] or ECS, through litigation conduct or otherwise, waived the right to arbitrate, [and] (iv) whether all or any part of [the] arbitration provision or Agreement is unenforceable, void or voidable including, but not limited to, on grounds of unconscionability[.]

(J.A. at 64.) And, lest any consumer try to escape Experian's wide net, the click-to-enroll terms-of-use agreement further provides that its arbitration provision "survive[s] termination" of the agreement. (J.A. at 64.)

## B. Procedural History

In June 2023, Young sued Experian in the District of New Jersey for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* Experian promptly moved to compel arbitration. Young opposed the motion and requested an opportunity to take limited discovery before the District Court considered the motion, arguing that "none of the claims in this case ha[d] anything … to do with [her] CreditWorks membership, or the agreement relating to that membership." (J.A. at 109.) The Court denied Experian's motion without prejudice and gave the parties fifty-three days to engage in limited discovery on the issue of arbitrability. Under the Court's order, "[u]pon the completion of discovery, Experian [would] be permitted to file a renewed motion, which th[e]

7

Court w[ould] assess under a [Federal Rule of Civil Procedure] 56 summary judgment standard."[4]  (J.A. at 3.)

In denying the motion to compel and allowing discovery, the District Court relied on our decision in *Guidotti*, 716 F.3d at 776.  There, we outlined two possible standards for district courts to use when considering motions to compel arbitration.  Under the first, which is applicable when "the existence of a valid agreement to arbitrate between the parties is apparent from the face of the complaint[,]" courts must "accept as true the facts established by the pleadings[.]" *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 216 (3d Cir. 2019) (emphasis omitted) (citing *Guidotti*, 716 F.3d at 774, 776).  It is, in other words, essentially the standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).[5]  *Guidotti*, 716 F.3d at 776.  The second standard

---

[4] Under Rule 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Applying that standard to a motion to compel arbitration, a "district court should only grant [the] motion … if there is no genuine dispute as to any material fact and, after viewing facts and drawing inferences in favor of the non-moving party, the party moving to compel is entitled to judgment as a matter of law." *Jaludi v. Citigroup*, 933 F.3d 246, 251 n.7 (3d Cir. 2019) (internal quotation marks omitted).

[5] Under Rule 12(b)(6), "[w]e will affirm a district court's dismissal for failure to state a claim only if, accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading

applies when the agreement to arbitrate is "unclear" "or if the plaintiff has responded to [the] motion to compel arbitration with additional facts sufficient to place the agreement" in dispute. *Id.* In that circumstance, "we require the party opposing the motion to submit evidence, which is typically obtained through discovery." *Singh*, 939 F.3d at 216 (citing *Guidotti*, 716 F.3d at 772). The motion to compel arbitration is then judged under the summary judgment standard of Rule 56.[6] *Guidotti*, 716 F.3d at 774-75.

The District Court held that the Rule 56 summary judgment standard applied to the claims at issue because "[Young]'s Complaint ma[de] no reference to the CreditWorks arbitration agreement; [she] d[id] not attach the agreement as an exhibit; and [she] d[id] not base the claims on the existence of the agreement." (J.A. at 7-8.) The Court further held that because no valid arbitration agreement was shown on the face of the complaint, "the non-movant must be given a limited opportunity to conduct discovery on the narrow issue of whether an arbitration agreement exists." (J.A. at 7 (citing

---

of the complaint." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (internal quotation marks omitted). Thus, for a motion to compel arbitration, "we look to the complaint and the documents on which it relies and will compel arbitration only if it is clear, when read in the light most favorable to the respondents, that the parties agreed to arbitrate." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 325 (3d Cir. 2022).

[6] *See supra* note 4.

*Guidotti*, 716 F.3d at 774).) Experian did not participate in discovery and chose, instead, to file this appeal.

## II.   DISCUSSION[7]

Experian argues that the District Court erred in mandating limited discovery on the issue of arbitrability, rather than granting the motion to compel arbitration on the record before it. In these particular circumstances, we agree.

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, enables judicial enforcement of a contract to arbitrate after the court "hear[s] the parties" and is "satisfied that the

---

[7] The District Court had jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(A)-(C). *See Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) ("We have jurisdiction over orders refusing to compel arbitration irrespective of the fact that the [motion] was denied without prejudice[.]" (internal quotation marks omitted)).

We exercise plenary review over the District Court's order denying a motion to compel arbitration. *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 217 (3d Cir. 2019). Applying the same standard as below, we review the Court's order under the summary judgment standard set out in Federal Rule of Civil Procedure 56(a). *Id.* That standard directs that a "district court should only grant a motion to compel arbitration if there is no genuine dispute as to any material fact and, after viewing facts and drawing inferences in favor of the non-moving party, the party moving to compel is entitled to judgment as a matter of law." *Jaludi*, 933 F.3d at 251 n.7 (internal quotation marks omitted).

making of the agreement for arbitration … is not in issue[.]" *Id.* § 4. Thus, before compelling arbitration, a court will typically determine that "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009); *see also Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99, 112 (3d Cir. 2000) (holding that "when the very existence of … an [arbitration] agreement is disputed, a district court is correct to refuse to compel arbitration until it resolves the threshold question of whether the arbitration agreement exists").

As mentioned above, we laid out in *Guidotti* two distinct paths for district courts to follow in making that determination. 716 F.3d at 772-76. To reiterate, "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that … a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery[.]" *Id.* at 776 (internal quotation marks omitted). But, we continued, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded … with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before" the motion to compel arbitration proceeds to decision. *Id.* (internal quotation marks omitted).

Thus, if a complaint does not set forth clearly that the claims are subject to an arbitration agreement, or if the plaintiff rebuts the motion to compel "with reliable evidence that is more than a naked assertion … that it did not intend to be bound by the arbitration agreement," then the court should

11

apply the Rule 56 standard. *Id.* at 774 (internal quotation marks omitted). In this regard, however, some language in *Guidotti* is more prescriptive than is helpful or accurate. We said that, under the Rule 56 standard, "'restricted inquiry into factual issues' *will* be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate," *id.* (emphasis added) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)), and, accordingly, the non-movant "*should*" get discovery, *id.* at 776 (emphasis added) (internal quotation marks omitted), and, with greater emphasis, "*must* be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement[,]" *id.* at 774 (emphasis added) (internal quotation marks omitted). Elsewhere in the opinion, however, we more accurately noted that, "any time the court must make a finding to determine arbitrability, pre-arbitration discovery *may* be warranted." *Id.* at 774 n.5 (emphasis added). Then, "[a]fter limited discovery, the court *may* entertain a renewed motion to compel arbitration … under a summary judgment standard." *Id.* at 776 (emphasis added).

Here, the District Court correctly determined, and the parties do not dispute, that the Rule 56 summary judgment standard applies to the claims at issue because "[Young]'s Complaint ma[de] no reference to the CreditWorks arbitration agreement; it d[id] not attach the agreement as an exhibit; and it d[id] not base the claims on the existence of the agreement." (J.A. at 7-8.) The Court therefore applied *Guidotti* and, hewing to the mandatory language of the opinion, held that "the motion to compel arbitration *must* be denied pending further development of the factual record." (J.A. at 9 (quoting *Guidotti,* 716 F.3d at 774).) That was a misstep we caused.

12

It was not wrong to apply *Guidotti* and hold that the Rule 56 standard applies here. But *Guidotti*'s call for limited discovery into arbitrability is best understood as being itself limited. It should be read as encouraging factual discovery when such discovery is warranted, which will often be the case but not always. In the absence of a factual dispute, there is nothing to discover and thus no need to delay a decision on the motion to compel.[8] In *Guidotti*, there was a genuine dispute of material fact as to whether a meeting of the minds occurred on the agreement to arbitrate. 716 F.3d at 767, 780. Because the record was insufficient for the district court to make that threshold determination before compelling arbitration, we remanded the case for further fact discovery. *Id.* at 779-81.

Similarly, in *Singh*, 939 F.3d at 210, we affirmed *Guidotti*'s directive that limited discovery take place when a factual dispute arises. *Singh* presented a threshold factual question of whether Uber drivers fell within the FAA's exemption from compelled arbitration for "workers engaged in

---

[8] District courts in our circuit have already recognized this point. *See, e.g.*, *Matczak v. Compass Grp. USA, Inc.*, No. 1:21-CV-20415, 2022 WL 557880, at *3-4 (D.N.J. Feb. 24, 2022) (holding that because "there [was] no factual dispute that Plaintiff executed the Arbitration Agreement[,] … no further discovery on this question [was] required" and applying the Rule 56 standard); *Triola v. Dolgencorp, LLC*, No. CV 22-840, 2022 WL 16834579, at *5 (D.N.J. Nov. 9, 2022) (granting the motion to compel under the Rule 56 standard without discovery because the plaintiff "assented to the [a]greement" and "[t]here [was] no disputed issue of material fact related to the [a]greement's validity").

13

foreign or interstate commerce." *Id.* at 214 (quoting 9 U.S.C. § 1). "Since neither the … [c]omplaint nor incorporated documents suffice[d] for determining whether Singh belong[ed] to [the relevant] class of workers[,]" we "ultimately remand[ed] for the District Court to examine the issue, with instruction to permit limited discovery before entertaining further briefing." *Id.* at 219. In both cases, factual disputes existed, necessitating additional discovery to resolve the question of arbitrability. *Id.*; *Guidotti*, 716 F.3d at 767, 780; *see also Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 329-30 (3d Cir. 2022) (remanding to the district court "to allow the parties to conduct discovery limited to the issue of arbitrability" because plaintiffs "brought forth sufficient facts to place the agreement to arbitrate in issue" (internal quotation marks omitted)).

The logic of those decisions flows from Rule 56 itself. It provides that, when a nonmovant needs more discovery before responding to a summary judgment motion, the nonmovant can seek that relief under subsection (d): "If a nonmovant shows … that … it cannot present facts essential to justify its opposition, the court may: … defer considering the motion or deny it … [or] allow time … to take discovery[.]" The provision for discovery in subsection (d) is thus tightly related to the requirement that the movant show "there is no genuine dispute as to any material fact" before the court can grant summary judgment. Fed. R. Civ. P. 56(a). In short, discovery addressing a motion to compel arbitration is unnecessary when no factual dispute exists as to the existence or scope of the arbitration agreement. *Cf. Guidotti*, 716 F.3d at 773 ("[A]n additional brake on the FAA's speed impulse" is "[t]he significant role courts play in interpreting the validity and scope of contract provisions[.]").

14

*Guidotti*'s mandate that when "arbitrability [is] not …
apparent on the face of the complaint, the motion to compel
arbitration must be denied pending further development of the
factual record" assumes that the factual record needs to be
developed. *Id.* at 774. In Young's case, that is not so. There
is no factual dispute about the existence of the agreement to
arbitrate. No one denies that the parties entered into the
agreement or that it is valid. In fact, Young freely
acknowledges that "[i]n the CreditWorks agreement, [she] and
ConsumerInfo.com, Inc. agreed to arbitrate disputes 'that arise
out of, or relate to, th[e] [CreditWorks] agreement.'"
(Answering Br. at 6 (fourth alteration in original).)

What is in dispute here is the scope and enforceability
of the agreement, but the decision on those issues is explicitly
delegated, by the terms of the agreement, to an arbitrator. In
*Rent-A-Center, West, Inc. v. Jackson*, the Supreme Court held
that, due to severability of arbitration provisions from the
remainder of a contract, unless a party challenges a "delegation
provision specifically, [the court] must treat [the delegation] as
valid under § 2, and must enforce it under §§ 3 and 4 [of the
FAA], leaving any challenge to the validity of the [a]greement
… for the arbitrator." *Rent-A-Center*, 561 U.S. 63, 72 (2010).
And, as more recently articulated in *Henry Schein, Inc. v.
Archer & White Sales, Inc.*, "parties may delegate threshold
arbitrability questions to the arbitrator, so long as the parties'
agreement does so by 'clear and unmistakable' evidence." 586
U.S. 63, 69 (2019) (quoting *First Options of Chi., Inc. v.
Kaplan*, 514 U.S. 938, 944 (1995)). If so, "a court possesses
no power to decide the arbitrability issue." *Id.* at 68. That rule
on delegability applies even to form contracts like the one here.
*Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1191, 1194 (2024)

15

(applying to an online "User Agreement that [users] agreed to when they created their accounts" the rule that, "absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration"). Thus, "a party seeking to avoid arbitration must directly challenge the arbitration or delegation clause, not just the contract as a whole." *Id.* at 1194.

Young did not do so, and that is fatal to her argument. She says that "Experian didn't even try to demonstrate that th[e] … arbitration agreement applied in any way to the claims at issue in this case." (Answering Br. at 4.) Yet, that is a challenge to the scope of the agreement, which the arbitrator is empowered to decide.[9] Again, under CreditWorks' Terms of Use, the arbitrator has "exclusive authority to resolve" "all issues regarding arbitrability, [and] the scope and enforceability of th[e] arbitration provision as well as the Agreement's other terms[.]" (J.A. at 64.) Therefore, since Young did not directly challenge the delegation clause in the District Court, we cannot properly consider the present argument regarding the arbitration agreement's scope.[10] Since

---

[9] Young seems to concede this argument, at least in part. (*See* J.A. at 114 ("If Experian had [met its burden of demonstrating that her claims fell within the agreement], the arbitrator could then be asked to determine whether [the] requisite connection actually exists and is sufficient.").)

[10] *See also Dennis v. City of Philadelphia*, 19 F.4th 279, 287 (3d Cir. 2021) ("To preserve an argument, a party must unequivocally put its position before the trial court[.]" (footnote and internal quotation marks omitted)).

16

there is no challenge to the agreement's formation, Young presents no judicially resolvable challenge to the motion to compel. *See* 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration … is not in issue, the court shall make an order directing the parties to proceed to arbitration[.]"); *Henry Schein, Inc.*, 586 U.S. at 69 ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." (citation omitted)).

In sum, since Young challenged only the arbitration agreement's scope – rather than its existence or validity – and since arbitrability determinations, including scope, have been delegated to an arbitrator, nothing is left for the District Court to decide pursuant to the FAA. *See Guidotti*, 716 F.3d at 776 (only when "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff … respond[s] … with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability" (internal quotation marks omitted)). The Court should therefore have granted the motion to compel arbitration without discovery, in keeping with the FAA's instruction to order arbitration if "satisfied that the making of the agreement for arbitration … is not in issue." 9 U.S.C. § 4; *see also BOSC, Inc. v. Bd. of Cnty. Comm'rs. Of Bernalillo*, 853 F.3d 1165, 1176 (10th Cir. 2017) ("The object of § 4 is to decide quickly – summarily – the proper venue for the case … so the parties can get on with the merits of their dispute." (internal quotation marks omitted)).

17

**III. CONCLUSION**

For the foregoing reasons, we will vacate the District Court's order and remand for further proceedings consistent with this opinion.