**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1515
_____

JAMES KIRKHAM,
on behalf of himself and all others similarly situated;
MATTHEW SESSOMS,
on behalf of himself and all others similarly situated

v.

TAXACT INC,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2:23-cv-03303
District Judge:  Honorable Wendy Beetlestone
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 16, 2025
_____

Before: PHIPPS, FREEMAN, and CHUNG, <u>Circuit Judges</u>

(Filed: March 26, 2025)

———————————

———————————

CHUNG, <u>Circuit Judge</u>.

TaxAct appeals from the District Court's denial of its motion to compel

arbitration. Because the District Court should have allowed the parties to complete

limited discovery, we will vacate the District Court's order and remand.

I.      <u>BACKGROUND AND DISCUSSION</u>[1]

TaxAct provides software that helps its users prepare and file their state and

federal tax returns. In order to use TaxAct's services, users need to create an account.

As part of the process of creating an account, users must agree to the Terms of Service

and License Agreement ("Terms"), which include an arbitration agreement.

This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1]      Because we write for the parties, we recite only facts pertinent to our decision. The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1367. We have jurisdiction under 9 U.S.C. §§ 16(a)(1)(A), (a)(3). We review "questions regarding the validity and enforceability of an agreement to arbitrate" de novo. <u>Guidotti v. Legal Helpers Debt Resol., L.L.C.</u>, 716 F.3d 764, 772 (3d Cir. 2013) (cleaned up). "[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." <u>Id.</u> at 776 (internal quotations omitted). "[I]f a complaint does not set forth clearly that the claims are subject to an arbitration agreement, or if the plaintiff rebuts the motion to compel with reliable evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement, then the court should apply the Rule 56 standard." <u>Young v. Experian Info. Sols., Inc.</u>, 119 F.4th 314, 319 (3d Cir. 2024) (cleaned up).

Matthew Sessoms sued TaxAct in the District Court for the Eastern District of Pennsylvania, alleging that TaxAct shared his personal information with Meta and Google in violation of federal tax laws and Pennsylvania's Wiretapping and Electronic Surveillance Control Act. TaxAct moved to compel arbitration and stay proceedings.[2] On March 15, 2024, the District Court denied TaxAct's motion with respect to Sessoms's claims.[3] TaxAct timely appealed.

A.      TaxAct's Arguments

TaxAct offers multiple reasons why Sessoms is bound to the Terms by actual or apparent authority, despite the fact that it was Krysta Sessoms,[4] not Sessoms himself, who agreed to the Terms.

"Actual authority denotes that authority which the principal intentionally confers upon the agent, or intentionally allows the agent to believe he has, or by want of ordinary care allows the agent to believe himself to possess." Lifshutz v. Lifshutz, 199 S.W.3d 9, 22 (Tex. App. 2006).[5] To determine whether there was actual authority, courts "examine the words and conduct by the principal to the" agent. Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C., 336 S.W.3d 764, 783 (Tex. App. 2011). In contrast,

---

[2]      This was TaxAct's third motion to compel arbitration and discovery on arbitrability had already begun.

[3]      James Kirkham, a co-plaintiff, is not a party to this appeal.

[4]      To avoid confusion, we will refer to Krysta Sessoms by her first name.

[5]      The Terms specify that Texas law governs disputes, and the parties do not argue otherwise. Appx. 133.

an agent has apparent authority if a third party reasonably believed that agent had authority based on the principal's actions. Gaines v. Kelly, 235 S.W.3d 179, 183 (Tex. 2007). It can arise when "a principal's actions … lack such ordinary care … leading a reasonably prudent person to believe that the agent has the authority he purports to exercise." Id. at 182 (Tex. 2007) (cleaned up). To determine whether there is apparent authority and the scope of that authority, "the reviewing court looks to acts of participation, knowledge, or acquiescence by the principal." Reliant Energy Servs., 336 S.W.3d at 784 (internal quotations omitted).

In assessing whether Krysta was an actual or apparent agent who could bind Sessoms to an agreement to arbitrate, the District Court concluded that "the facts necessary to determine whether there is an agency relationship are in genuine dispute." Appx. 28. It identified two areas of dispute: (1) whether Krysta had actual authority to agree to the Terms; and (2) the scope of Krysta's apparent authority. The District Court relied in part on Sessoms's declaration that Sessoms "gave Krysta permission to prepare [his] tax returns," but "did not grant her authority to enter into any agreements on [his] behalf or to waive [his] right to a jury trial or to participate in a class action." Appx. 176. The District Court concluded that it could not resolve the identified areas of dispute because TaxAct failed to meet its burden of showing Krysta's authority to bind Sessoms. Appx. 29. Having concluded that TaxAct failed to meet its burden, the District Court then denied TaxAct's motion to compel arbitration.

4

While we agree with the District Court that more factual development was needed in the two areas identified,[6] under Guidotti and its progeny, this required the District Court to permit limited discovery on these issues. Guidotti, 716 F.3d at 776. Factual discovery is required when a genuine dispute exists "as to whether a meeting of the minds occurred on the agreement to arbitrate." Young v. Experian Info. Sols., Inc., 119 F.4th 314, 319–320 (3d Cir. 2024). Because the District Court found that such a genuine dispute existed, it should have permitted discovery to continue before ruling on TaxAct's motion to compel.[7] Guidotti, 716 F.3d at 776 ("[I]f the plaintiff has responded to a

---

[6] At the time of the District Court's decision, TaxAct was "on the brink of deposing Sessoms and his spouse." Opening Br. at 6. Such discovery might have allowed TaxAct, for instance, to develop evidence in support of its argument that Sessoms placed no limitations on how Krysta effected the filing of his taxes. See, e.g., Reliant Energy Servs., 336 S.W.3d at 783 (noting that actual authority includes implied authority, which is "the authority of an agent to do whatever is necessary and proper to carry out the agent's express powers."); cf. Lifshutz, 199 S.W.3d at 22 (actual authority is created "by want of ordinary care [that] allows the agent to believe himself to possess [such authority]"). (We express no position on the legal merits of such an argument—that is for the District Court to determine in the first instance.)

[7] Because we vacate and remand for discovery on TaxAct's agency arguments, we do not reach TaxAct's arguments that Sessoms assented to the Terms through equitable estoppel or a third-party beneficiary theory. Those theories assume that the principal was not a party to contract and a finding of an agency relationship may affect that underlying assumption. See Cmty. Health Sys. Pro. Servs. Corp. v. Hansen, 525 S.W.3d 671, 697 (Tex. 2017) ("An agency relationship… entitles the agent to act on the principal's behalf with the same force and effect as if the principal had performed the act himself."); compare In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 739 (Tex. 2005) ("Under 'direct benefits estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes."); Jody James Farms, JV v. Altman Grp., Inc., 547 S.W.3d 624, 635 (Tex. 2018) (third-party beneficiary to contract may be compelled to arbitrate "so long as the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit." (internal

5

motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." (internal quotations omitted)).

## B.    Sessoms's Arguments

Sessoms asserts three reasons why the District Court's denial of TaxAct's motion to compel should nonetheless be affirmed.[8]  The District Court rejected these arguments as do we.[9]

### 1.    The agreement to arbitrate was not illusory

Sessoms argues that the arbitration agreement is illusory because the Terms allow TaxAct to modify its agreement at any time and there is no savings clause that restrains TaxAct's universal right to arbitrate.  Answering Br. at 21 (citing In re Halliburton Co., 80 S.W.3d 566, 569-70 (Tex. 2002)).  Sessoms cites Royston, Rayzor, Vickery, &

---

quotations omitted)).  Upon close of the limited discovery, the District Court can consider to what extent, if any, it needs to further address these theories.

[8]     Sessoms also argues that "under Texas law, the mere incorporation of an arbitrator's rules in an agreement does not show a clear intent to arbitrate arbitrability." Answering Br. at 6.  Beyond stating this in the introduction, he offers no further support and thus forfeits this argument. John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

[9]     Though Sessoms does not bring a cross appeal, we may still reach his arguments. Jennings v. Stephens, 574 U.S. 271, 276 (2015) ("An appellee who does not take a cross-appeal may urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court.  But an appellee who does not cross-appeal may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." (cleaned up)).

6

Williams, LLP v. Lopez for the proposition that the "arbitration provision remains illusory if the contract permits one party to legitimately avoid its promise to arbitrate, such as by unilaterally amending or terminating the arbitration provision and completely escaping arbitration." 467 S.W.3d 494, 505 (Tex. 2015). This does not apply here because the Terms are not a stand-alone arbitration agreement. See In re AdvancePCS Health L.P., 172 S.W.3d 603, 607 (Tex. 2005). The arbitration provision is not illusory as the rest of the Terms provide consideration.

2.    The District Court lacked jurisdiction to determine whether TaxAct waived its right to arbitrate

Sessoms contends that TaxAct waived its right to arbitrate. The District Court rejected this argument and concluded that Sessoms could not avoid arbitration through TaxAct's waiver. We agree that this argument does not provide a means for Sessoms to avoid review by an arbitrator but reach this conclusion on different grounds. The Terms incorporated the Judicial Arbitration and Mediation Services ("JAMS") arbitration rules' "delegation clause whereby the arbitrator must adjudicate jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought." Appx. 12 (cleaned up). While the District Court correctly concluded that it had jurisdiction to determine whether Sessoms entered into an agreement with TaxAct that included an arbitration clause, MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds, 974 F.3d 386, 402 (3d Cir. 2020), waiver is not a question of formation. That question is one to be determined by an arbitrator should the District Court conclude that there was an

7

agreement between Sessoms and TaxAct.  Howsam v. Dean Witter Reynolds, Inc., 537

U.S. 79, 84 (2002) ("the arbitrator should decide allegations of waiver, delay, or a like

defense to arbitrability." (cleaned up)); cf. MZM, 974 F.3d at 405–06 (concluding that

the question of agreement formation was properly assessed by District Court because

claim of fraud in the execution would negate mutual assent).  We thus agree with the

District Court's rejection of this argument on the grounds that it lacked jurisdiction to

consider it.

### 3.    TaxAct provided users with sufficient notice

Sessoms argues that the contract does not provide for mutual assent because

TaxAct did not provide users with explicit textual notice that clicking the "I agree" button

means that users assent to the Terms.  Sessoms also contends that there was no

reasonably conspicuous notice of the Terms, because the website refers to the "Terms of

Service & Terms of Use," not the "TaxAct Terms of Service and License Agreement."

Answering Br. at 37–38.

When creating an account, TaxAct users must check a box that states, "I agree to

the TaxAct Terms of Service & Terms of Use, and have read and acknowledge [sic] the

Privacy Statement."  Appx. 128.  The "TaxAct Terms of Service & Terms of Use" and

"Privacy Statement" are blue hyperlinks.  Id.  When e-filing the tax returns, users must

again check a box stating, "I agree to the terms and conditions," where "terms and

conditions" is an underlined blue hyperlink.  Appx. 135.

This arrangement may have been a clickwrap agreement or a browsewrap agreement.[10] "Whereas courts routinely enforce clickwrap agreements, ... the validity of a browsewrap license turns on whether a website user has actual or constructive knowledge of a site's terms and conditions prior to using the site." StubHub, 676 S.W.3d at 201. The inquiry "turns on whether notice of the terms and conditions was reasonably conspicuous." Id. Courts are "more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement—that is, where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website." Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1176 (9th Cir. 2014).

We do not decide whether the agreement is a clickwrap or browsewrap because we find that the Terms provide for mutual assent under any characterization of the contract. The online agreement has many characteristics of clickwrap. Users must affirmatively click a box to confirm they agree to the Terms. Additionally, users cannot complete e-filing without acknowledging the terms and conditions. See Recursion Software, Inc. v. Interactive Intel., Inc., 425 F. Supp. 2d 756, 783 (N.D. Tex. 2006) (finding that the user agreed to the terms of a license agreement in part because

---

[10] The terms of clickwrap agreements are displayed on the screen and users agree to terms by clicking on buttons. StubHub, Inc. v. Ball, 676 S.W.3d 193, 200 (Tex. App. 2023); Oberstein v. Live Nation Ent., Inc., 60 F.4th 505, 513 (9th Cir. 2023). Browsewrap agreements "typically involve a situation where a notice on a website conditions use of the site upon compliance with certain terms or conditions, which may be included on the same page as the notice or accessible via a hyperlink." StubHub, 676 S.W.3d at 200–201.

9

"[w]ithout accepting the terms of the license, installation [was] impossible."); <u>RealPage, Inc. v. EPS, Inc.</u>, 560 F. Supp. 2d 539, 541 (E.D. Tex. 2007) (noting that the software would not install unless the user clicked the box indicating the user accepted the terms).

The Terms are also reasonably conspicuous. They are in blue, sometimes underlined, unlike the rest of the text, which is mostly black. The Terms are also in the main portion of the webpage, rather than being tucked away. <u>Wilson v. Huuuge, Inc.</u>, 944 F.3d 1212, 1220–21 (9th Cir. 2019) ("[C]ourts will not enforce agreements where the terms are buried at the bottom of the page or tucked away in obscure corners of the website." (internal quotations omitted)). Courts have enforced similar agreements. <u>See, e.g.</u>, <u>Oberstein</u>, 60 F.4th at 515–16 (finding an online agreement enforceable where at multiple stages users were presented with a confirmation button informing them that by clicking a confirmation button they were agreeing to the Terms and where the Terms hyperlink was "conspicuously distinguished from the surrounding text in bright blue font.").

We also reject Sessoms's argument that the agreement is not enforceable because the text refers to the "Terms of Service & Terms of Use," not the "TaxAct Terms of Service and License Agreement." It is clear that the hyperlinks referred to the Terms of Service and License Agreement, and users had reasonable notice of the Terms of Service. <u>See</u> <u>Keebaugh v. Warner Bros. Ent. Inc.</u>, 100 F.4th 1005, 1021 n.6 (9th Cir. 2024) (finding that "a typographical error on the sign-in screen" where the screen said "Terms of Use" but linked to "Terms of Service" did not prevent the agreement from being enforceable because it was clear "what was meant by 'Terms of Use.'").

10

For the reasons set forth above, Sessoms may not avoid arbitration based on his argument as to lack of mutual assent.

II. CONCLUSION

For the reasons presented above, we will vacate the District Court's order denying the motion to compel arbitration and remand with instructions to allow limited discovery on arbitrability.