**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2657
_____

SYMRISE, INC.

v.

DEBORAH KENNISON; AHMED ALI, also known as Ahmed Nour; DOEHLER
NORTH AMERICA, INC.; PAUL GRAHAM

AHMED ALI; PAUL GRAHAM,
                            Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:22-cv-07299)
District Judge:  Honorable Esther Salas
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 8, 2025
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, PORTER and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 2, 2026)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Symrise, Inc. ("Symrise") filed a lawsuit against its former employees Paul Graham and Ahmed Nour alleging that they colluded with Symrise's competitor, Doehler North America, Inc. ("Doehler"). Graham and Nour moved to compel arbitration of Symrise's claims pursuant to the arbitration provisions in their respective employment agreements. The District Court denied that motion because it determined that there was no valid arbitration agreement between Graham and Symrise and that discovery was necessary to determine whether Nour and Symrise entered into an arbitration agreement. After the District Court issued its opinion, however, we clarified the standard for evaluating the necessity of pre-arbitration discovery in Young v. Experian Information Solutions, Inc., 119 F.4th 314 (3d Cir. 2024). We will vacate and remand because we conclude that Graham and Symrise entered into a valid arbitration agreement and to allow the District Court to apply the standard that we articulated in Young in evaluating whether discovery is necessary to determine whether Symrise's claims against Nour are arbitrable.

I.[1]

Symrise alleges that its former executives, Graham and Nour, violated the terms of their employment agreements when Graham helped Doehler poach Symrise's employees and Nour stole large troves of proprietary information. Symrise brings claims for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., and the New Jersey

---

[1]    We write primarily for the parties and recite only the facts essential to our decision.

2

Trade Secrets Act, 56 N.J. Stat. Ann. § 56:15–1 et seq., as well as various common law claims.

Symrise alleged that all of its "employees in the Food & Beverage NA division sign an employment agreement," and that Nour signed an agreement with Symrise on December 10, 2013.[2]  Joint Appendix ("JA") 109; see also JA 125, 264 n.2.  Symrise also appended to the operative complaint signed copies of Graham's employment agreement ("Graham Employment Agreement") and separation agreement ("Graham Separation Agreement").  The Graham Employment Agreement includes an arbitration clause that provides, as relevant:

> The Employer and Employee mutually consent to the final resolution by binding arbitration of any and all employment related claims between them . . . . [S]pecifically excluded from this Agreement are claims for declaratory relief or injunctive relief arising from alleged unfair competition, theft of trade secrets or business property, or the enforceability or breach of restrictive covenants . . . . **The parties hereto acknowledge that, by entering into this Agreement, they are waiving their rights to a judicial forum for the resolution of any covered Claims.**

JA 135.

Upon Graham's departure, Graham and Symrise entered into the Graham Separation Agreement, pursuant to which Symrise agreed to provide Graham various separation benefits.  That contract also provides that "[Symrise] and Graham intend the terms and conditions of this Agreement to govern all issues related to Graham's

---

[2]  Although the operative complaint alleges that the agreement was signed on December 13, 2014, the parties agree that this was a typographical error and the agreement was in fact signed on December 10, 2013.

employment and the termination of his employment with [Symrise]." JA 138. It further provides that Graham "releases, waives, and discharges [Symrise] . . . from each and every waivable claim, action or right of any sort," including "any claims arising from or relating in any way to his employment relationship with [Symrise], the terms and conditions of that employment relationship, or the termination of that employment relationship." JA 138.

The Graham Separation Agreement "sets forth the entire agreement and understanding between the parties hereto" and "supersedes all prior agreements and understandings concerning the subject matter of this Agreement except for any agreements referenced in Paragraph 4 herein." JA 141–42. Paragraph 4, in turn, provides that the Graham Separation Agreement did not "diminish Graham's post-employment obligations . . . as outlined in the **Symrise Employment Agreement signed by Graham on 12/24/2013**." JA 140. Finally, the Graham Separation Agreement contains a choice of law clause selecting New Jersey law.

Graham and Nour moved to compel arbitration under their respective employment agreements with Symrise. In support of his motion to compel arbitration, Nour submitted a declaration that attached (1) a signed copy of an employment agreement with Symrise AG ("Nour 2013 Agreement"), Symrise's parent company, that was executed in 2013, and (2) an unsigned copy of an employment agreement with Symrise that he allegedly executed in 2016 ("Nour 2016 Agreement"). Nour claimed that he executed the Nour 2016 Agreement as a condition of his employment with Symrise and argued that agreement was operative when Nour resigned from Symrise. Only the 2016 agreement

4

contained an arbitration provision, and it was identical to the arbitration agreement between Graham and Symrise. Symrise opposed the motion to compel arbitration.

The District Court denied Graham's motion to compel arbitration. It held that the Graham Employment Agreement was superseded by the Graham Separation Agreement, which contained no arbitration clause but did contain a choice of law clause that was inconsistent with an intent to arbitrate. It further held that Graham waived any right to enforce the arbitration agreement contained in his employment agreement by entering into the Graham Separation Agreement.

The District Court also denied without prejudice Nour's motion to compel arbitration and ordered discovery on whether Symrise's claims against Nour were arbitrable. It reasoned that discovery was required because the alleged arbitration agreement was not incorporated into the complaint and because Symrise had raised sufficient facts to place the validity of the arbitration agreement in issue. Graham and Nour timely appealed.

## II.[3]

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., requires us to compel arbitration if the parties entered into a valid and enforceable arbitration agreement that covers the instant dispute. See Young, 119 F.4th at 318. In evaluating whether the parties agreed to arbitrate a dispute, we apply traditional principles of state contract law.

---

[3]    The District Court had jurisdiction under 28 U.S.C. § 1331. Our Court has appellate jurisdiction under 9 U.S.C. § 16(a)(1)(B). See Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 771 n.3 (3d Cir. 2013) (noting that appellate jurisdiction exists over motions to compel arbitration denied without prejudice).

See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (collecting cases). When the existence and scope of the arbitration agreement are clear on the face of the complaint and the documents relied upon therein, discovery is not required and we evaluate a motion to compel arbitration under Federal Rule of Civil Procedure 12(b)(6). See Young, 119 F.4th at 317–18. If, however, the arbitrability of the parties' dispute is not clear from those documents or there is a factual dispute as to whether the plaintiff's claims are arbitrable, then the district court must order discovery and evaluate the motion under Rule 56. Id. at 320. "We exercise plenary review over the District Court's order denying a motion to compel arbitration." Id. at 318 n.7.

A.

Graham argues that the District Court incorrectly held that the Graham Separation Agreement superseded the parties' arbitration agreement, and that even if it did not, Graham waived his right to enforce the arbitration agreement. We agree.

The District Court properly evaluated Graham's motion under Rule 12(b)(6) because the parties' arguments regarding the arbitrability of Symrise's claims against Graham rely solely on the materials attached to the complaint. In reviewing a motion to compel arbitration under the Rule 12(b)(6) standard, we accept all factual allegations as true and construe the complaint in the light most favorable to the non-moving party. See Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 772 (3d Cir. 2013).

Applying this standard, we hold that the Graham Separation Agreement did not displace the arbitration provision contained in the Graham Employment Agreement. We determine whether a contract supersedes an earlier one under New Jersey law by looking

6

to "the parties' intent as discerned 'from the contracts themselves.'" Field Intel. Inc. v. Xylem Dewatering Sols. Inc., 49 F.4th 351, 358 (3d Cir. 2022) (quoting Rosenberg v. D. Kaltman & Co., 101 A.2d 94, 96 (N.J. Super. Ct. Ch. Div. 1953)).  There is no supersession unless both contracts address "the same subject matter" and the latter contract "is so 'inconsistent' with the former 'that the two cannot stand together.'"  Id. (quoting Rosenberg, 101 A.2d at 96).

Although the Graham Separation Agreement provides that it "supersedes all prior agreements . . . concerning the subject matter of this Agreement," JA 142, and "govern[s] all issues related to Graham's employment and the termination of his employment with [Symrise]," JA 138, it expressly incorporates the Graham Employment Agreement. Paragraph 10 of the Graham Separation Agreement explicitly notes that the agreement does not supersede "any agreements referenced in Paragraph 4 herein."  JA 142. Paragraph 4, in turn, provides:

> [T]his Agreement does not cancel or otherwise diminish Graham's post-employment obligations under any agreement with Symrise (or any predecessor or affiliate of Symrise) respecting the obligations relating to confidentiality or the use of confidential information, disclosure and ownership of inventions and intellectual property, and No Business Diversion and Non-Solicitation of customers and or employees as outlined in the **Symrise Employment Agreement signed by Graham on 12/24/2013,** which are incorporated herein by reference.

JA 140.  To the extent that there is a conflict between paragraph 4, which specifically incorporates the Graham Employment Agreement, and the more general terms of that contract which would indicate that the Graham Separation Agreement supersedes any

7

prior agreements concerning the same subject matter, paragraph 4's more specific language controls.  See Homesite Ins. v. Hindman, 992 A.2d 804, 808 (N.J. Super. Ct. App. Div. 2010) (applying "the well-recognized rule of construction that when two provisions dealing with the same subject matter are present, the more specific provision controls over the more general").

The District Court reasoned that, although paragraph 4 referenced the Graham Employment Agreement, the arbitration provision was not incorporated into the Graham Separation Agreement because arbitration was not among the topics enumerated in paragraph 4.  But paragraph 10 incorporates any "agreements referenced in Paragraph 4" in their entirety; it is not limited to the portions of those agreements enumerated in paragraph 4.  JA 142.  Because we must give contractual terms their "plain and ordinary meaning," Boyle v. Huff, 314 A.3d 793, 799 (N.J. 2024), we decline to read atextual limitations into paragraph 10's incorporation of the agreements referenced in paragraph 4.  The plain text of the Graham Separation Agreement clearly indicates the parties' intent to incorporate the Graham Employment Agreement, including the arbitration provision therein, into the Graham Separation Agreement.

The District Court further relied on the provision of the Graham Separation Agreement in which Graham "release[d], waive[d], and discharge[d] [Symrise] from each and every waivable claim, action or right of any sort," JA 138, to hold that the Graham Separation Agreement superseded the Graham Employment Agreement.  In so doing, it relied on Borough of Atlantic Highlands v. Eagle Enterprises, Inc., 711 A.2d 407 (N.J. Super. Ct. App. Div. 1998), which held that the defendant waived its right to arbitrate any

8

disputes by entering into a settlement agreement stating that the parties' prior contract was "completed" and the settlement "constitute[d] full and final satisfaction for all claims." Id. at 410. The Borough of Atlantic Highlands court concluded that this "unambiguous language" indicated that the "original . . . contract was to be regarded as history." Id.

The Graham Separation Agreement, by contrast, did not resign the Graham Employment Agreement to history. Rather, the Graham Separation Agreement expressly provides that it did not supersede the Graham Employment Agreement, so we cannot conclude that the parties intended the Graham Separation Agreement completely to replace the Graham Employment Agreement and the arbitration agreement therein. See Field Intel., 49 F.4th at 359. Accordingly, Graham did not relinquish his right to enforce the arbitration agreement when he entered into the Graham Separation Agreement.

The District Court also held that the parties could not have intended to incorporate the arbitration provision into the Graham Separation Agreement because that agreement includes a choice of law clause that is inconsistent with an intent to arbitrate. In so doing, it relied on Applied Energetics, Inc. v. NewOak Capital Markets, LLC, 645 F.3d 522 (2d Cir. 2011), in which the court held that an arbitration agreement was displaced by a subsequent contract selecting New York state and federal courts as the forum for any dispute. See id. at 525–26. But the Graham Separation Agreement contains no forum selection clause, only a choice of law clause that, like the choice of law clause in the Graham Employment Agreement, selects New Jersey law. Because New Jersey law can be applied in an arbitration, the choice of law clause does not "stand[] in direct conflict"

9

with the arbitration clause or undermine the parties' clear intent to arbitrate disputes relating to Graham's employment. Applied Energetics, 645 F.3d at 525; see also DIRECTV, Inc. v. Imburgia, 577 U.S. 47, 53–54 (2015) ("[T]he Federal Arbitration Act allows parties to an arbitration contract considerable latitude to choose what law governs . . . .").

We thus conclude that the arbitration agreement in the Graham Employment Agreement remains binding. Because the District Court did not reach the parties' arguments as to whether the arbitration agreement covers Symrise's claims, we do not address that dispute on appeal and leave the determination of the arbitration agreement's scope in the first instance to the District Court on remand.

B.

Nour argues that the District Court erred in denying without prejudice his motion to compel arbitration and ordering limited discovery on the issue of whether his dispute with Symrise was arbitrable. Because the District Court relied on portions of our opinion in Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764 (3d Cir. 2013), that, as we have since explained in Young, were "more prescriptive than is helpful or accurate," 119 F.4th at 319, we will vacate and remand for further consideration under the standard we clarified in Young.

We suggested in Guidotti that discovery was "necessary" if "arbitrability [is] not . . . apparent on the face of the complaint" or if the opposing party produces "reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement." 716 F.3d at 774 (internal quotations omitted). After the District

10

Court issued its opinion, however, we explained in Young that discovery is required only if a "factual dispute exists as to the existence or scope of the arbitration agreement." 119 F.4th at 320. We explained that the "logic" of this rule "flows from Rule 56 itself," id., which provides that summary judgment is only appropriate upon a showing that "there is no genuine dispute as to any material fact," id. (quoting Rule 56(a)).

The District Court held that discovery was required because the "Complaint lacks the requisite clarity to establish that the parties agreed to arbitrate Plaintiff's claims against Nour." JA 26. The District Court concluded that because the arbitration agreement was filed as part of the defendants' motion to compel arbitration, rather than the complaint, our opinion in Guidotti required that the parties be afforded an opportunity to engage in discovery. The District Court further reasoned that discovery was appropriate because Symrise disputed whether Nour signed the Nour 2016 Agreement, and thus proffered more than a "naked assertion" that it was not bound by the agreement. JA 28 (quoting Guidotti, 716 F.3d at 778).

The District Court did not, however, determine whether any failure to sign the agreement would have raised "a genuine dispute of material fact as to whether a meeting of the minds occurred on the agreement to arbitrate." Young, 119 F.4th at 320; see also Cornelius v. CVS Pharmacy Inc., 133 F.4th 240, 249 (3d Cir. 2025). New Jersey courts have held that an employment agreement may still be binding if the employee does not sign an agreement but otherwise clearly manifests assent. See Jaworski v. Ernst & Young U.S. LLP, 119 A.3d 939, 945–46 (N.J. Super. Ct. App. Div. 2015); cf. Leodori v. CIGNA Corp., 814 A.2d 1098, 1107 (N.J. 2003) (holding that an employee was not

11

bound by an unsigned arbitration agreement when he did not explicitly manifest assent).

Thus, Nour argues that whether he signed the agreement is irrelevant because he clearly manifested his assent by executing the offer letter attached to the employment agreement and remaining employed at Symrise. Nour relies on the fact that the agreement includes language requiring the employee to agree to the terms of that agreement "[a]s a condition of [his] initial and continuing employment" to argue that his continued employment manifested his assent to the agreement. Defs. Br. 49. Symrise counters that, even if the parties entered into an arbitration agreement, Nour waived his right to enforce that agreement by failing immediately to move to compel arbitration.

We leave the determination in the first instance of whether the existence of Nour's signature is a genuine dispute of material fact to the District Court's sound judgment on remand. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (noting that a fact is "material" if it "might affect the outcome of the suit"). In determining on remand whether the lack of a signature on the Nour 2016 Agreement would "affect the outcome of the suit," id., the District Court may consider whether Nour clearly manifested his assent to the Nour 2016 Agreement; whether, even if Nour has the right to enforce the arbitration provision in that agreement, he waived any such right; and whether the instant dispute falls within the scope of the arbitration provision.

III.

For the foregoing reasons, we will vacate the District Court's order denying the motion to compel arbitration and remand for further proceedings consistent with this opinion.

12